Van Voorhis, J.
Plaintiff occupied the second floor of a loft building owned by defendant 970 Kent Avenue Corp. and managed by defendant Grosfeld House, Inc. A sprinkler head located on plaintiff’s premises, which was covered by an alarm system, gave way releasing water which damaged property owned by plaintiff on its premises.
In this action for damages, the trial court'found that defendant American District Telegraph Company (ADT) was negligent in making repairs to the alarm system which was designed to give warning of escaping water, awarded damages to plaintiff against all defendants in the amount of $7,500 and awarded $56.10 to defendants 970 Kent Avenue and Grosfeld House on their cross complaint against defendant ADT, holding that ADT did not violate what was then section 235 of the Real Property Law by attempting to exempt itself from liability under its maintenance agreement of the alarm system, since it merely limited its liability.
The Appellate Division eliminated all indemnification, holding that the negligence of all defendants was primary, and conse *62 quently that there could he no recovery over on any theory of implied indemnity; that the contract between ADT and Grosfeld House contained no express indemnity provision; that it was unnecessary to determine the effect of the limitation of liability clause in the contract.
Defendant ADT argues that the courts below erred in holding it liable because, even if ADT was negligent in undertaking and failing to repair defects in the alarm system in a careful and skillful manner, such alleged negligence was not the proximate cause of the damages; that the responsibility for the maintenance, repair and condition of the sprinkler system (as distinguished from the alarm system) was that of defendants Kent and Grrosfeld, therefore, ADT should not have been held liable for defects or damage therefrom.
The facts are simply stated. Plaintiff’s premises were closed at about 5:30 p.m. on July 14,1958, when everything was in good condition. At about 8:00 a.m. on July 15,1958, water was found gushing out of a broken sprinkler head. An employee of the New York Board of Fire Underwriters, Fire Patrol Department, arrived on the scene apparently in response to a call from the Fire Department which had been notified by a passerby. This sprinkler head was operating with full pressure discharging about 20 gallons per minute, at the rate of 1,200 gallons per hour, and an inch to two and one-half inches of water covered 90% of the second floor, the area of which was 60 x 175 feet. He estimated that from seven to eight thousand gallons had escaped, which would mean that it had been flowing for more than six hours. The Fire Department shut off the water, but was not able to do so until about an hour after the first firemen arrived. The recovery is entirely for damage from the escaping water to merchandise belonging to plaintiff.
The liability of defendants-appellants 970 Kent Avenue Corp. and Grrosfeld House, Inc., presented questions of fact beyond our power to review. The lease, to be sure, contained a non-liability clause “unless [the damages were] caused by or due to the negligence of landlord, its agents, servants or employees ”. That is enough to present an issue of negligence in that the sprinkler system had been installed in this building for 20 years without having been inspected as former section *63 C26-1380.0 of the Administrative Code provided should be done monthly.
A qualified expert witness, who was at the premises while the water was flowing, testified that a sprinkler head discharges water due to fire, a physical blow, freezing or metal fatigue. There was no freezing in the middle of July, no circumstantial evidence was discovered of any fire, and, although there was evidence that plaintiff had piled cartons of merchandise on the floor as high as the sprinkler heads, if striking by these or some other form of trauma had broken the sprinkler head, it would have been discovered before everyone left plaintiff’s premises before closing on July 14. Nothing of that sort occurred, but, on the contrary, there is testimony that water was not flowing when the workmen left the premises and, according to the testimony of how long the water had been flowing the next morning, it could not have begun until hours after the establishment had been closed for the night. Freezing, fire and physical contact have thus been eliminated as causes. Metal fatigue could have been found by the trier of the facts, by process of elimination, to have been the proximate cause (Stubbs v. City of Rochester, 226 N. Y. 516). It is a reasonable inference that metal fatigue would have been discovered if the sprinkler system had been inspected as the Administrative Code required. Where parts of a building have been demised to several tenants, as here, it is the duty of the landlord to use reasonable diligence to put and keep in safe condition the portions of the building used in common including water pipes and the “ general sprinkler system ” in the building (2 New York Law of Landlord and Tenant, § 891; Chaplin, Landlord and Tenant, § 488).
The more difficult questions concern the primary liability of ADT to plaintiff and its liability to indemnify the other defendants. ADT undertook no responsibility with respect to the maintenance of the sprinkler system. That is disclaimed in paragraph 11 of its maintenance contract of the alarm system. This paragraph states that its obligation shall relate solely to the signaling system and that it shall in no way be obligated to alter, replace, repair or operate any other equipment.
ADT would be under no obligation to plaintiff for breach of contract, as Special Term said, if it had simply breached its *64 agreement with, the other defendants by failing to make any inspection of the alarm system (Rosenbaum v. Branster Realty Corp., 276 App. Div. 167). It has been held liable to plaintiff for the reason that it did make an inspection, and was negligent in failing to repair defects in the signal system thereby discovered and by not notifying the owner of the trouble. “It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all ” (Glanzer v. Shepard, 233 N. Y. 236, 239, quoted in Marks v. Nambil Realty Co., 245 N. Y. 256, 258). Other cases embodying this principle are Wroblewski v. Otis Elevator Company (9 A D 2d 294, 297); Jasenzak v. Schipp (278 App. Div. 660, and cases cited).
“The record leads to the inescapable conclusion”, said Special Term ‘ ‘ that the defect was in the alarm system and that the claimed repairs were made thereto. It appears that sole access to the alarm system was with American District Telegraph Company. This accounts for the non-notification of the subscriber.” This is mainly true, but the facts are not quite so simple. The alarm system maintained by ADT was designed to give an alarm by automatic transmitter to ADT’s Long Island central station, which would immediately be transmitted to the Telegraph Bureau of the Fire Department, if water began to flow from the sprinkler system at 970 Kent Avenue, or if the water level of the reserve supply in a storage tank at the top of the building fell one foot below the top of the tank. These two transmitters were located in a special cabinet under lock and key to which no one had access except employees of ADT.
ADT argues that the trouble discovered by its inspector, the witness Vincent Kyan, was entirely in connection with the transmitter which notified if the water fell below one foot of the top of the storage tank, and that there is no evidence that this water level did fall or that any malfunctioning of that transmitter was a proximate cause of the water damage. That argument overlooks that both of these transmitters were connected to the same circuit so that the alarm would be given by the same signal either if the water in the storage tank fell below one foot or if water were flowing out of sprinkler heads. What happened, in this instance, appears rather clearly from the ADT fire report (Exhibit 9) which refers to the circumstance *65 that the gravity tank transmitter had been in trouble. The testimony of ADT’s Eyan is that he made an inspection on July 11 (four days prior to this occurrence) at which time he did not check the sealed section of the transmitter, hut found moisture in the switch for the gravity tank which he dried out with a handkerchief. He informed his office not to call the subscriber if the trouble signal reoccurred since the appliance had to be repaired by ADT’s employees. A succession of false alarms were given out in the next few days, which are enumerated in detail in Special Term’s opinion, and which are supported by Exhibit I, but were not reported to the owners of the building, contrary to usual custom, nor was a further inspection made.
The ADT fire report (Exhibit 9) shows graphically what happened: “ The gravity tank went in trouble at 1:13 A.M. Operating Department made no investigation. Instructions from Plant Tester Eyan on 7/11/58 were that any signals received from the gravity tank was a swinging condition and an ADT trouble.”
What this means is, when deciphered, that a signal came through at 1:13 a.m. which, because of the single circuit, could have emanated from either the sprinkler transmitter or the storage tank transmitter and which, this time, was not a false alarm. Due to ADT’s negligence, the trier of the fact could find that, through faultily repairing the transmitter at the storage tank, ADT ignored this signal at 1:13 a.m. which would otherwise have been relayed to the Fire Department for attention. This confusion arose, the trier of the fact could find, from affirmative defective maintenance rather than mere inaction in performing its maintenance agreement. It brings the case within the orbit of the duty to act carefully if one acts at all.
Although holding ADT liable to the plaintiff was within the power and function of the trial court, affirmed by the Appellate Division, there was error in treating ADT and the owner and general manager of the building as joint tort-feasors. Moreover the damages sustained in consequence of the failure of the alarm signal system did not comprise all of the injury done by the escaping water for which the owner and manager are liable. If the signaling system had operated to perfection, it would have taken some time for the Fire Department to have *66 reached the building and. to have shut off the water. About an hour did elapse before the water was shut off on the morning of July 15, after the firemen arrived. About 1,200 gallons of water escaped during that hour, flowing at the rate of approximately 20 gallons per minute. Neither Special Term nor the Appellate Division could take for granted that substantial damage would not be done by the escape of that quantity of water which would have occurred before it could have been turned off even if the signal system had been functioning as it was supposed to do. For this reason the case should be remitted for a determination of the amount of liability of ADT to plaintiff, which would be less and is based upon a different tort from that of the codefendants.
These defendants were not in pari delicto with the consequence that the active and passive negligence rule does not preclude recovery over against ADT of whatever damage would have been avoided if the signal alarm system had operated properly. 970 Kent and Grosfeld correctly argue that the law governing indemnification resembles the situation where personal injuries sustained in an automobile accident are afterwards aggravated by malpractice. The rationale is elucidated in Musco v. Conte (22 A D 2d 121, 124-125):
“ We are presented on this appeal with a fact pattern which is sometimes confused with the classic type of joint torts when the injury occurred as a product of the acts of several wrongdoers in concert, or flowing from concurrent acts of several wrongdoers happening at the same time (cf. 1 Harper and James, Law of Torts, § 10.1, pp. 693-694). The original injury to Musco’s hand was caused by the negligence of the defendants he sued, concurring at the same time; but that injury was merely the subject of the treatment through which his death occurred as a consequence of the negligence of the third-party defendants. In this sense, Conte and the third-party defendants are not joint tort-feasors; they are, rather, tort-feasors whose wrongs were successive and independent (Derby v. Prewitt, 12 N Y 2d 100, 105-106; Matter of Parchefsky v. Kroll Bros., 267 N. Y. 410, 413-414). Conte may be liable to the plaintiff for the damages arising from the ultimate injury (Milks v. McIver, 264 N. Y. 267, 270), but his wrongful act was not concurrent with the negligence of the third-party defendants, and *67 Ms culpability was, as alleged, of a lesser degree. Hence, the rule that the impleader of a third party will not lie at the instance of a tort-feasor in pari delicto fails of application (cf. Middleton v. City of New York, 300 N. Y. 732; McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 318).
“ The right of indemnity has been held available at the behest of a defendant whose wrongful act resulted in injury aggravated by the negligence of a treating physician (Clark v. Halstead, 276 App. Div. 17; Rezza v. Isaacson, 13 Misc 2d 794; Rizzo v. Steiner, 36 Misc 2d 701; Primes v. Ross, 123 N. Y. S. 2d 702; cf. Fisher v. Milwaukee Elec. Ry. & Light Co., 173 Wis. 57). By this device, the plaintiff may still, as she chose here, recover damages from the defendants whom she originally elected to sue; but the jury may, under proper instructions and by special verdict, decide the proportions of the recovery to be borne by the defendant Conte and by the third-party defendants impleaded by Conte.”
The active and passive negligence rule precludes recovery only where the parties are in pari delicto (Tipaldi v. Riverside Mem. Chapel, 273 App. Div. 414, 418, affd. 298 N. Y. 686). Here 970 Kent and Grosfeld are held liable to plaintiff for failing to inspect the sprinkler system in consequence whereof the cap came off the sprinkler head through metal fatigue. ADT was subject to no responsibility for maintenance of the sprinkler system and undertook no maintenance ox repair of the sprinkler head. It was not a joint tort-feasor. Its obligation to 970 Kent and Grosfeld under its contract was to maintain and operate a warning signal system which would notify in case of discharge of water from the sprinkler system. Ordinarily this would serve as an alarm in event of fire. It was designed to apprise the Fire Department and, through it, the owner and tenant of the leakage of water. No failure of ADT to perform its duty resulted in the bursting of the sprinkler head; its fault lay in undertaking negligently to maintain the alarm system, which, if it had worked, would have reduced the amount of damage. Its function was to protect 970 Kent and Grosfeld in event of contingencies of this nature. It had, indeed, contracted with them to do just that. They had done nothing which contributed to the failure of the alarm system. It was exclusively in the possession of ADT under lock and key.
*68 Respecting the quantum of damages which may be recovered over against ADT, just as plaintiff is not entitled to recover against ADT the full amount of its loss (but only such as occurred as a result of failure of notification), so neither can 970 Kent or Grosfeld recover against ADT the full amount which they have been held liable to pay to plaintiff. It is necessary for the trier of the fact to determine how much of the loss was suffered as a result of water damage prior to the time when, the Fire Department would normally have arrived and been able to turn off the water if the signal alarm system had operated as it was designed to do. Only such damage as resulted from the flowing of the water subsequent to that time could be charged on any theory to ADT. The Third Department disposed of a similar problem in Clark v. Halstead (276 App. Div. 17, 19).
The question remains whether if 970 Kent and Grosfeld are entitled to indemnification from ADT, as Special Term held, such recovery is to be limited to $56.10 by reason of the limitation of liability clause in ADT’s contract. It is in paragraph 12 of Exhibit 7, and states: ‘‘ That in the event of a default on the part of the Contractor in the performance of any of its obligations hereunder, whether by way of non-performance or negligent performance or otherwise, and a resulting loss, or in any other event resulting from the relationship hereby created, the Contractor’s liability shall not exceed the sum of $50.00, or a sum equal to ten percentum of the then current annual service charge hereinabove provided for whichever is greater, and such limited liability shall be exclusive.”
That might be the end of it except for section 235 of the Real Property Law in force at the time, now section 5-323 of the General Obligations Law, which states that all agreements ‘ ‘ in or in connection with or collateral to any contract or agreement affecting real property ” whereby “ a contractor exempts himself from liability for injuries to person or property caused by or resulting from the negligence of such contractor ” as a result of work performed or services rendered in connection with the construction, maintenance or repair of real property “ shall be deemed to be void as against public policy and wholly unenforceable.”
Special Term disposed of that statute by saying that ADT under its agreement ‘ ‘ does not exempt itself from liability but *69 merely limited its liability.’’ In the absence of statute, a contracting party such as ADT could exempt itself from the consequences of its own ordinary negligence if the language so specifies (Ciofalo v. Vic Tanney Gyms, 10 N Y 2d 294), and, notwithstanding a statute such as former section 235 of the Real Property. Law, it is possible for parties to limit their liability provided that there is a voluntary choice of obtaining full or limited liability by paying under a graduated scale of rates proportioned to the responsibility in transportation or other service rendered (Conklin v. Canadian-Colonial Airways, 266 N. Y. 244, 248). A discussion of this rule referring to the history of limitation of liability of common carriers in the Federal and New York State courts is given in Boyle v. Bush Term. R. R. Co. (210 N. Y. 389 [Miller, J.]). The option of a higher shipping rate without limitation as to value in case of loss or damage is accented. Such an option is not the criterion in case of all bailments, absent a statute such as former section 235 of the Real Property Law, where the test sometimes is whether the limitation of liability or valuation clause would normally have come to the attention of the bailor (e.g., Howard v. Handler Bros. & Winell, 279 App. Div. 72, affd. 303 N. Y. 990; Klar v. H. & M. Parcel Room Inc., 270 App. Div. 538, affd. 296 N. Y. 1044). The contractual limitation of a warehouseman’s liability is enforcible according to whether an opportunity is given to the depositor of the goods to obtain an increased valuation by paying increased rates (Uniform Commercial Code, § 7-204).
Under the decisions cited, it is clear that such an option must be given to the other contracting party in the face of such a statute as former section 235 of the Real Property Law in order to constitute it a valid limitation rather than an exemption of liability which that statute forbade. The present limitation clause provides for a maximum liability of $50 “or a sum equal to ten percentum of the then current annual service charge hereinabove provided for whichever is greater, and such limited liability shall be exclusive.” This language does not imply that the $561 annual service charge in this agreement is subject to variatiou in accordance with the extent of ADT’s maximum liability. It says that the exclusive maximum liability shall not exceed 10% of the current annual service charge. No opportunity is here given to the subscriber to pay an annual *70 service charge, if he chooses, consonant with fnll liability, The amount of recovery, regardless of the loss, could never be greater than 10% of the current annual service charge. For these reasons we deem this to be an invalid limitation of liability.
The order appealed from should be modified so as to remit to Special Term the determination of what part of plaintiff’s loss would have been prevented if ADT’s signal alarm system had operated properly, and to reduce the liability against ADT to such amount, and, likewise to determine the amount of indemnification of 970 Kent Avenue Corp. and Grosfeld House, Inc., by ADT which is to be measured by the extent that they participate in paying to plaintiff any excess over that portion of its recovery which is payable by them alone. As so modified, the order should be affirmed, without costs'.