# (May 11, 1982)

■ ARTHUR RICHARDS, INC., Respondent, v 79 FIFTH AVENUE COMPANY et al., Appellants, and L & D OUTERWEAR Co., INC., Respondent. — Judgment, Supreme Court, New York County (Lee, J.), entered November 24, 1980, which, *inter alia,* held (i) appellants 79 Fifth Avenue Company and Orda Management to be 20% liable, and (ii) defendant L & D Outerwear to be 80% liable for the occurrence, modified, on the law, by vacating so much thereof as held appellants to be 20% liable, by finding Outerwear to be 100% liable for all the damages and, as modified, affirmed, with costs. The jury found the tenant, L & D Outerwear Co., Inc., to be 80% liable for the overflow that occurred on the sixteenth floor in the building. The jury found 79 Fifth Avenue Company and Orda Management Corporation, the owner and managing agent, to be 20% responsible for the damages. We would hold L & D to be 100% liable for the property damage. The evidence indicates that the appellants informed L & D's president, Isaac Wertman, that the water would be turned off on Friday. Wertman, in turn, instructed his employee, Norman Glickman, to make sure that all faucets were turned off. However, one faucet was left open in L & D's premises on the sixteenth floor. As a result, plaintiff's property on the lower floors was damaged. L & D's president, Wertman, knew that the water would be turned on before he reopened his shop on that following Monday. Since the appellants did not have access to L & D's premises on the sixteenth floor, it was L & D's responsibility to be particularly careful in

closing all the faucets. (Cf. *Simon-Reigel Cigar Co. v Gordon-Burnham Battery Co.*, 20 Misc 598.) L & D's failure to turn off all its faucets is the proximate and sole cause of the flooding. Concur — Murphy, P. J., Silverman and Ross, JJ.

Markewich and Fein, JJ., dissent in a memorandum by Fein, J., as follows: I would affirm. The landlord and management company, defendants, were under a duty to exercise reasonable care to keep in safe condition those portions of the premises over which the landlord retained control. That duty included the inspection of such portions of the premises at reasonable intervals. In discharge of this duty the landlord and the management company were obligated to repair the leak in the main water pipe located in the building subbasement which fed the roof tank of the building. The duty was to make the repairs in a reasonably safe and prudent manner and to make such inspections as were reasonably necessary to determine that there would be no leak or flooding when the water was turned on (*Melodee Lane Lingerie Co. v American Dist. Tel. Co.*, 18 NY2d 57, 63). Repair required shutting off the building's water supply. The superintendent notified the tenants that the water would be shut off for the day, Friday, August 27, 1979, and that they should check their toilets. The evidence established that a faucet was left open in the premises of defendant L & D Outerwear (L & D), the tenant on the sixteenth floor. This was apparently the source of the water which damaged the plaintiff's property on the fifteenth and twelfth floors. The water leaked from the sixteenth floor down to the fifteenth and fourteenth floors, and then down to the twelfth floor (there being no thirteenth floor). Although L & D's premises and the premises of the plaintiff were locked for the weekend, by the time the plumbers finished the repairs, there is no evidence that the fourteenth floor was locked. There was evidence of a water leak on the ceiling of the fourteenth floor. It stands admitted that no examination or inspection of the fourteenth floor or any other part of the building was made by the landlord or the management company after the water had been turned on. The damage on the ceiling of that floor was not observed until the following Monday morning at about the time the damage to plaintiff's property on its two floors was discovered. Had there been an interim inspection by the landlord or the management company, steps might have been taken which could have reduced or eliminated the damage. The jury could have found that the failure to make such inspection constituted a breach of the duty to make the repairs in a reasonably safe and prudent manner, and that such breach of duty was a proximate cause of the damage. Similarly, the jury could have found that the landlord and the management company were negligent in turning the water back on after the tenants had left on Friday evening. There was the risk that there might be a leak or overflow caused by repressurizing the system when the water was turned on again, which would go unobserved by the tenants who were away. There was no plug of any kind in the sink in which the water was allowed to run. The jury could also have found that there was a defect in the drainage system which was the responsibility of the landlord and management company to maintain and keep in a state of good repair. The record is unclear as to why there should have been a flood or overflow merely because a faucet was negligently left turned on. If the drainage system operated properly the water should have followed its usual course and not caused a flood. Repressurizing the system could have caused an overflow. Although it may well be, as the jury found, that the defendant tenant was liable for the major share of the damage because its employees apparently left the faucet on, this does not warrant discharging the landlord and management company of any liability as a matter of law. The principle laid down in *Dole v Dow Chem. Co.* (30 NY2d 143) is that all of those who owe a duty to the injured party and breach such duty, which breach is a

proximate cause of the injury, may be cast in damages in proportion to the extent that the trier of the facts finds that their breach contributed to the injury. Apportionment is then appropriate. "Right to apportionment of liability or to full indemnity, then, as among parties involved together in causing damage by negligence, should rest on relative responsibility and to be determined on the facts." (*Dole v Dow Chem. Co., supra,* at p 153.) On the facts here, the jury was entitled to find the landlord and management company liable for a proportion of the damage. There may be more than one proximate cause of an injury, even where one cause intervenes after another. The issue is for the jury (*Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315). It does not appear that the jury's determination that the landlord and management company should be liable for 20% of the damage was against the weight of the evidence. The jury's verdict was not palpably wrong. It has not been shown that the jury did not reach its conclusions on a fair interpretation of the evidence (*Marshall v Mastodon, Inc.,* 51 AD2d 21). In essence, there was a sufficient basis for the jury to impose liability upon the landlord and management company because (1) the water was turned back on at a time when none of the tenants was present and the tenants would not return until after the weekend; (2) a defect or inadequacy in the drainage system may have contributed to the flood when the water system was repressurized; and (3) there was no inspection of the building by the landlord and management company after the water was turned on. The inspection was first made after the plaintiff discovered the water damage on the following Monday morning. In my view, the jury's findings were supported by the evidence, requiring that the judgment be affirmed.