BOHN HEAT TRANSFER, Plaintiff-Appellant, v. GENERAL ELECTRIC COMPANY, Defendant-Appellee.

Fourth District   No. 4—90—0758

Opinion filed June 26, 1991.—Rehearing denied July 26, 1991.

Michael R. Cornyn, of Thomas, Mamer & Haughey, of Champaign, for appellant.

Dukes, Martin, Helm & Ryan, Ltd., of Danville (John R. Martin, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Bohn Heat Transfer (Bohn) seeks money damages for losses incurred when one of its electrical transformers leaked a fluid containing toxic polychlorinated biphenyls (PCB's) after it was serviced by defendant General Electric Company (GE). Bohn brought six counts, based on contract, warranty, and negligence, and also a wilful and wanton version of each. The trial court entered summary judgment for GE on the contract, warranty, and negligence counts, and Bohn voluntarily dismissed the remaining counts based on wilful and wanton theories. Bohn appeals the grant of summary judgment. We affirm the trial court's judgment on the contract and warranty counts, but reverse on Bohn's negligence claim and remand for trial.

In the contract at issue, GE agreed to repair two transformers at Bohn's plant. Each transformer stood over 7 feet tall, weighed 12,700 pounds, and was approximately 5 feet in width and length. The transformers each contained approximately 375 gallons of pyranol, a coolant containing PCB's. After GE repaired the transformers, one of the transformer's gaskets leaked amounts of PCB-laden pyranol.

In the three counts at issue, Bohn alleged (1) GE's actions constituted a breach of the parties' contract, (2) GE breached the implied warranty that its repair work would be performed in a good and

workmanlike manner, and (3) GE acted negligently in its repair. In each count, Bohn sought damages for the cleanup of the pyranol, replacement of premises destroyed during the cleanup, and loss of production hours while the plant was shut down.

The parties' contract specifically disclaimed any warranty of merchantability or fitness for a particular purpose, and excluded consequential or incidental damages. It also provided Bohn's exclusive remedy for defective repair was for GE to reperform the service, or replace defective parts. Further, GE limited its liability under the contract to the price of the specific product or service giving rise to the claim. The parties agree this case should be governed by New York law as specified in their contract.

According to the terms of the contract, Bohn admits its claim against GE should fail. However, Bohn argues that under New York law the court should not give effect to the provisions limiting or excluding GE's liability. Section 5—323 of the New York General Obligations Law (N.Y. Gen. Oblig. Law §5—323 (McKinney 1989)) attempts to deter contractors' shoddy workmanship by rendering void provisions in their service contracts exempting themselves from liability for negligence. (*St. Vincent's Medical Center v. Vincent E. Iorio, Inc.* (N.Y. Sup. Ct. 1974), 78 Misc. 2d 968, ____, 358 N.Y.S.2d 993, 996.) It states:

> "Every covenant, agreement or understanding in or in connection with or collateral to any contract or agreement affecting real property made or entered into, *whereby or whereunder a contractor exempts himself from liability for injuries to person or property caused by or resulting from the negligence* of such contractor \*\*\* as a result of work performed or services rendered in connection with the construction, maintenance and repair of real property or its appurtenances, *shall be deemed to be void as against public policy and wholly unenforceable.*"
> (Emphasis added.) N.Y. Gen. Oblig. Law §5—323 (McKinney 1989).

The trial court granted GE summary judgment on Bohn's counts alleging breach of contract, breach of implied warranty, and negligence. The court ruled the parties' contract contained express warranties which provided, by its terms, the sole and exclusive remedies for Bohn. The court rejected Bohn's argument that section 5—323 nullified the contract's provisions exempting GE from negligence liability because section 5—323 did not apply as the transformers were not "appurtenances," and held, even if section 5—323 applied, its pro-

visions were not violated because the contract permissibly limited GE's liability.

Neither the statute nor any of the cases define "appurtenance." New York courts have held that section 5—323 applies to an alarm system attached to a sprinkler system in a building (*Melodee Lane Lingerie Co. v. American District Telegraph Co.* (1966), 18 N.Y.2d 57, 218 N.E.2d 661, 271 N.Y.S.2d 937) and to elevator maintenance work (*Rogers v. Dorchester Associates* (1973), 32 N.Y.2d 553, 300 N.E.2d 403, 347 N.Y.S.2d 22); but not to electric generators (*Auburn Steel Co. v. Westinghouse Electric Corp.* (1990), 158 A.D.2d 938, 551 N.Y.S.2d 101), or to fire and burglar alarms unconnected to sprinkler systems (*Florence v. Merchants Central Alarm Co.* (1980), 51 N.Y.2d 793, 412 N.E.2d 1317, 433 N.Y.S.2d 91).

■ Black's Law Dictionary defines "appurtenance" as including "[s]omething annexed to another thing more worthy as principal ***. [Citation.] An article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold." (Black's Law Dictionary 94 (5th ed. 1979).) It is clear the transformer is appurtenant to real property as it is (1) mounted and bolted to a 12-inch thick concrete pad and enclosed by a steel cage also mounted to the floor; (2) applied to the same purpose as the realty to which it is attached, *i.e.*, supplying power to the plant; and (3) the transformer was intended to be permanently attached to the plant, as it was installed when the plant was built and the plant is unable to operate without the transformers. Thus, this contract involves "services rendered in connection with *** real property or its appurtenances," and section 5—323 applies (N.Y. Gen. Oblig. Law §5—323 (McKinney 1989)).

■ Applying section 5—323 to the parties' contract, it becomes apparent the contract's provisions improperly limited GE's liability for its negligence, and thus violated section 5—323. Section 5—323 voids contractual provisions in which a contractor "exempts himself from liability," but permits contractors to limit their negligence liability if they provide increased coverage for their potential negligence for an increase in the contract price.

In *Melodee Lane*, New York's highest court stated that parties may limit their negligence liability under section 5—323, but only when "there is a voluntary choice of obtaining full or limited liability by paying under a graduated scale of rates proportioned to the responsibility in *** service rendered." (*Melodee Lane*, 18 N.Y.2d at 69, 218 N.E.2d at 667, 271 N.Y.S.2d at 946.) An option must be offered to the other party to pay an increased amount for the services ren-

dered, in order to receive increased coverage for the contractor's negligence, for the provision to "constitute *** a valid limitation rather than an exemption of liability which that statute forbade." (*Melodee Lane*, 18 N.Y.2d at 69, 218 N.E.2d at 667, 271 N.Y.S.2d at 946.) In *Long Island Lighting Co. v. IMO Delaval, Inc.* (S.D.N.Y. 1987), 668 F. Supp. 237 (hereinafter *LILCO*), a contractual provision limiting a contractor's liability was held valid under section 5—323 where he provided insurance to cover losses due to his negligence, and the other party had the option of obtaining greater insurance coverage. *LILCO*, 668 F. Supp. at 243-44.

In the instant case, GE attempted to limit its liability by providing repair as Bohn's sole remedy, and limiting its liability to reperformance of the service or the price of the contract. As in *Melodee Lane*, there was no option for Bohn to pay a higher service charge and increase GE's liability for its potential negligence. Thus, the limit on GE's liability is rendered invalid to the extent it attempts to protect GE from liability due to its negligence.

■ Nevertheless, the breach of contract claim was properly dismissed on summary judgment, as it does not allege negligence, and is thus unaffected by section 5—323. Bohn's sole remedy for GE's alleged breach of contract is repair of its allegedly defective work, which it has already performed. The breach of implied warranty count was likewise properly dismissed on summary judgment as it also does not allege negligence, and the contract expressly disclaimed any implied warranties of merchantability or fitness for a particular purpose.

Bohn's negligence claim is the only count affected by section 5—323, and it was improperly dismissed on summary judgment. Although the contract attempts to limit GE's liability for negligence by providing the sole remedy of repair and limiting its liability to the price of the contract, these provisions—insofar as they apply to Bohn's negligence—are rendered unenforceable by section 5—323.

■ While Bohn may proceed on its negligence count, it is unable to recover damages resulting from lost production hours. Losses due to business interruption are economic losses to which section 5—323 does not apply. Section 5—323, by its very terms, prohibits contractors from exempting themselves from liability for "injuries to *person[s] or property*." (Emphasis added.) (N.Y. Gen. Oblig. Law §5—323 (McKinney 1989).) Loss of business profits due to the plant's shutdown are not damages to persons or property, and may properly be excluded. (*LILCO*, 668 F. Supp. at 244 ("Exemptions from liability for economic losses are not rendered void or unenforceable under section 5—323").) Thus, the contract's provision exempting GE from conse-

quential or incidental damages should be given effect to the extent it applies to the purely economic losses caused by the plant's shutdown.

In conclusion, the trial court's order granting summary judgment is affirmed as to the contract and warranty counts, *i.e.*, counts I and III. However, section 5—323 applies to the parties' contract, which improperly limited GE's negligence liability without providing Bohn an opportunity to obtain greater protection against GE's potential negligence for an increased contract price. Accordingly, the order of summary judgment is reversed as to the negligence count, count V, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

LUND, P.J., and STEIGMANN, J., concur.