■ Harold Tate et al., Plaintiffs, v Clancy-Cullen Storage Co., Inc., Sued Herein as Clancy & Cullen Storage Co., Inc., Defendant and Third-Party Plaintiff-Appellant. AFA Protective Systems, Inc., Third-Party Defendant-Respondent. —Wherein it seeks leave to appeal to Court of Appeals, motion denied; wherein reargument is sought, motion granted to the extent of recalling and vacating this court's unpublished decision and order (Appeal No. 42605) entered on July 2, 1991 and substituting a new decision and order, below.

Order of the Supreme Court, New York County (Harold Tompkins, J.), entered on February 1, 1990, which denied third-party plaintiff's motion to dismiss the defense, is unanimously reversed, on the law, and the defense dismissed, without costs.

This appeal raises a public policy question of whether a contractor and employer may, by written agreement, shift liability for injuries sustained by its employee to the owner of the property where the work is performed or whether such a provision is barred by sections 5-322.1 or 5-323 of the General Obligations Law.

Plaintiff Harold Tate was injured in a fall from a ladder while installing an alarm system on the premises of defendant and third-party plaintiff Clancy-Cullen Storage Co. ("Clancy-Cullen") and while in the employ of third-party defendant AFA Protective Systems, Inc. ("AFA"). In his complaint, plaintiff Tate alleges that he was injured because of a defective ladder and that "while working on the ladder, said ladder was caused to collapse causing the plaintiff to fall to the ground below". The complaint specifies that "the ladder extension failed to hold and gave way, causing the ladder to collapse". In his deposition, plaintiff stated that the ladder was furnished by AFA at his request.

Plaintiff's action against Clancy-Cullen seeks damages for liability imposed on a property owner under Labor Law §§ 200, 240 and 241. Clancy-Cullen's third-party action seeks indemnification or contribution from AFA. However, AFA relies on certain clauses of its printed contract which, it contends, insulate it from liability. One of the provisions states that it shall apply to losses sustained as a consequence of those events "which the service is designed to detect or avert" and limits AFA's exposure to damages equal to "ten

percent of the annual service charge or $250, whichever is greater", where loss results from "performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of the contractor". Read as a whole, application of this clause is clearly limited to losses sustained by the property owner as a result of the failure of the alarm system and should not be accorded a more extensive interpretation.

More problematical is a broad indemnification provision which states, insofar as is relevant, that Clancy-Cullen "agrees to and shall indemnify and save harmless the Contractor * * * for and against any claims, suits, losses, demands and expenses arising from any death of or injury to any person or any loss or damage to property occasioned or alleged to be occasioned by Contractor's * * * performance or failure to perform its obligations under this agreement whether due to Contractor's negligence or otherwise". A companion provision states that Clancy-Cullen and all parties claiming under it shall "release and discharge Contractor from and against all hazards, covered by Subscriber's insurance". The language of these provisions is sufficiently broad to encompass the bodily injury sustained by AFA's employee, plaintiff Harold Tate, unless they are rendered void as against public policy by operation of the General Obligations Law.

Section 5-322.1 (1) of the General Obligations Law covers "a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances" and "declares void agreements purporting to indemnify contractors against liability for injuries 'contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part' " *(Brown v Two Exch. Plaza Partners,* 76 NY2d 172, 178). However, it does not appear that this section has been applied to contracts for the installation of alarm systems. Rather, section 5-323 of the General Obligations Law has been held to govern in such circumstances.

In *Melodee Lane Lingerie Co. v American Dist. Tel. Co.* (18 NY2d 57, 70, *rearg denied* 18 NY2d 751), the Court of Appeals held that a contractual provision limiting the liability of a company which maintained an alarm system and which ignored an alarm signalling a water leak was "an invalid limitation of liability" under section 5-323 of the General Obligations Law, and the company was held liable for contri-

bution on plaintiff's claim for property damage. In *Florence v Merchants Cent. Alarm Co.* (51 NY2d 793, *affg* 73 AD2d 869), however, the statute was held to be inapplicable to a contractual limitation of liability where the alarm company merely connected its transmitter to a burglar alarm system installed by another entity, not a party to the action (73 AD2d 869, *supra*). The court concluded that the contract was "not one 'affecting real property' or for 'services rendered in connection with the construction, maintenance and repair of real property' within the meaning of section 5-323 of the General Obligations Law" (51 NY2d 793, 795, *supra*).

This court has previously held that the contract at bar concerns services rendered in connection with the alteration and repair of a building or structure within the purview of Labor Law § 240 on the ground that AFA was installing a replacement fire alarm system *(Tate v Clancy-Cullen Stor. Co.,* 171 AD2d 292). This finding is law of the case and dictates the conclusion that these activities are clearly within the ambit of "services rendered in connection with the construction, *maintenance* and *repair* of real property" within the contemplation of section 5-323 of the General Obligations Law (emphasis added).

We note also that this matter is distinguishable from *Fisher v Biderman* (154 AD2d 155, *lv denied* 76 NY2d 702), in which this court held the statute inapplicable where a defendant, for its own benefit, elected to be a self-insurer. Specifically, we held that the statute does not apply to contracts to which the City of New York is a party and in which the City agrees to indemnify the contractor *(supra)*. The record before us does not suggest that Clancy-Cullen was attempting to act as a self-insurer or that such a course would have been beneficial to its interests.

Defendant AFA relies on *Failla v A. F. A. Protective Sys.* (139 AD2d 693) in support of its indemnification defense. In that case, the property owner, and not AFA, was held liable under a similar indemnification provision for injuries sustained by a passerby as a result of the negligence of AFA's employee while performing maintenance and repair services on a "sprinkler alarm" system. However, in *Failla,* the Appellate Division, Second Department relied on the holding in *Antical Chems. v Westinghouse Sec. Sys.* (86 AD2d 768 [4th Dept 1982], *appeal dismissed* 56 NY2d 645; *see also, Appliance Assocs. v Dyce-Lymen Sprinkler Co.,* 123 AD2d 512 [4th Dept 1986]) which, in turn, cited *Florence v Merchants Cent. Alarm*

*Co.* (51 NY2d 793, *supra)* in support of the conclusion that "contracts for installing and maintaining alarm systems are not contracts 'affecting real property' or for 'services rendered in connection with the construction, maintenance and repair of real property' within the meaning of section 5-323 of the General Obligations Law" (86 AD2d, *supra,* at 769). However, as noted earlier, the contractor in *Florence* merely connected a police alarm transmitter to an alarm system installed by another entity *(Florence v Merchants Cent. Alarm Co.,* 73 AD2d 869, *supra),* and the Court of Appeals was careful to distinguish the facts before it from the general case in which liability is predicated on the failure of an alarm system installed by the defendant (51 NY2d, *supra,* at 795). *Florence,* therefore, does not stand for the proposition that "limitations of liability in 'alarm' contracts are not barred by General Obligations Law § 5-323" *(Failla v A. F. A. Protective Sys., supra,* at 694), but merely that the addition of a transmitter to an existing alarm system does not constitute the rendition of services "in connection with the construction, maintenance and repair of real property" as contemplated by General Obligations Law § 5-323.

*Melodee Lane Lingerie Co. v American Dist. Tel. Co. (supra)* states the general rule on limitation of liability with respect to *property damage* resulting from the failure of an alarm system. A contractual limitation of liability by an alarm company for its own negligence causing damage to property is invalid unless the other party is given "a voluntary choice of obtaining full or limited liability by paying under a graduated scale of rates proportioned to the responsibility in * * * services rendered" (18 NY2d, *supra,* at 69). This narrow exception to the statutory proscription against limitation of liability for a contractor's negligence (General Obligations Law § 5-323) has no application to personal injury. Concur—Carro, J. P., Milonas, Ellerin, Kupferman and Rubin, JJ.