OPINION OF THE COURT
Kaye, J.
This appeal, in consolidated actions against a fire alarm company for negligent services resulting in extensive property damage, centers on an exculpatory clause in the company’s contract with its customer. For the reasons that follow, we conclude that the clause would not bar recovery by the customer for the company’s grossly negligent conduct; that an issue of fact regarding gross negligence precludes summary judgment for the company; and that, as to the contribution claims asserted against the company, some should be conditionally reinstated while others were properly dismissed.
I.
In 1985, 810 Associates owned a 42-story skyscraper in midtown Manhattan. As required by local law, the building was equipped with a central station fire alarm system. 810 contracted with Holmes Protection, Inc. to provide central station monitoring service — meaning that at its central station Holmes would receive any alarms sounded on 810’s premises and immediately notify the fire department.
On the morning of Saturday, April 13, an 810 employee called Holmes to ask that the alarm system be deactivated because of work being done at the building. When Holmes temporarily takes a subscriber’s system out of service, or deactivates the system, Holmes continues to receive signals but simply does not report them to the fire department. In these circumstances, additionally, Holmes’ practice is to restore normal service within several hours unless the subscriber directs otherwise. Thus, Holmes deactivated 810’s system on Saturday morning as requested, and reactivated it on Saturday night.
On Monday morning, April 15, 810’s chief engineer, unaware that service had already been restored, telephoned Holmes to request reactivation. Holmes’ dispatcher — allegedly *549 an untrained, inexperienced substitute — initially understood that 810 wanted normal service restored. But as the brief conversation proceeded, the dispatcher became confused by the caller’s repeated insistence that he would "activate” the system and the dispatcher concluded — without attempting to elicit greater clarification from the caller, or any other confirmation — that 810 wanted its system taken out of service.
Seven to nine minutes later, Holmes began receiving fire signals from the building. However, consistent with his mistaken impression that the system was to be taken out of service, the dispatcher simply assumed that he should ignore those signals. In fact, a four-alarm fire had started on the 28th floor, which was reported directly to the fire department by others — but not until minutes after the signals were first received by Holmes.
A spate of lawsuits followed. 810 sued Holmes and others connected with its fire detection system — designers, manufacturers, parts suppliers, installers, inspectors — for damages exceeding $7 million, on the theory that a small, containable fire had spread out of control because the fire detection system failed to timely detect the fire, and spread even further because of Holmes’ failure to transmit the alarm to the fire department. Tenants sued 810, Holmes and other alarm-related entities, and 810 and the alarm defendants sought contribution from Holmes.
The actions were consolidated, and after discovery Holmes sought summary judgment dismissing all claims. As an affirmative defense against 810’s negligence and breach of contract causes of action, Holmes relied on a contractual exculpatory clause which provided:
"Holmes shall not be liable for any of [810’s] losses or damages * * * caused by performance or nonperformance of obligations imposed by this contract or by negligent acts or omissions by Holmes.”
Alternatively, Holmes relied on a contract clause that limited its liability to the lesser of $250 or 10% of the annual service charge "as liquidated damages.”
Although concluding that the exculpatory clause would be unenforceable if Holmes was grossly negligent, Supreme Court characterized the circumstances of April 15 as merely a "misadventure, flowing from a high water mark of mis-communication,” presenting no triable issue of gross negligence, *550 and it dismissed 810’s claims against Holmes.[1] The court also dismissed the tenants’ claims and all contribution claims against Holmes, finding that none of the parties asserting those claims were third-party beneficiaries of the 810/Holmes contract or otherwise owed a duty by Holmes.
Taking a different view of the evidence, the Appellate Division held that there was a triable issue of fact as to Holmes’ gross negligence, and further ordered that the contribution claims be reinstated should Holmes be found grossly negligent at trial. While agreeing with the Appellate Division on the issue of gross negligence, we conclude that the court erred in its contribution analysis and therefore modify the order and answer the certified questions in the negative.
II.
Initially, we must determine whether 810 may pursue tort claims against Holmes, or is limited to breach of contract remedies. Holmes argues that its duties to 810 arose solely from its contractual undertaking and thus this case at most presents a breach of contract. 810 counters that grossly negligent fire alarm service threatens life and property and is actionable under traditional tort law. Resolution of this threshold issue affects the negligence claims and the availability of contribution.
Some claims plainly sound in tort — for example, the case of a pedestrian struck by a careless driver. Others are clearly contract, like the case of the merchant who fails to deliver goods as promised. In the former case, the duty breached — to drive carefully — is one not imposed by contract but by law as a matter of social policy (see, Prosser, Torts, at 613 [4th ed]). In the latter, the duties arise solely from the parties’ consensual undertaking (id.).
This case partakes of both categories, and thus falls in the borderland between tort and contract, an area which has long perplexed courts. As we observed more than a century ago:
"Between actions plainly ex contractu and those as clearly ex delicto there exists what has been termed a border-land, where the lines of distinction are shadowy and obscure, and the tort and *551 the contract so approach each other, and become so nearly coincident as to make their practical separation somewhat difficult.”
(Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382, 390; see also, Matter of Paver & Wildfoerster [Catholic High School Assn.], 38 NY2d 669, 678; Prosser, Selected Topics on the Law of Torts, ch VII, The Borderland of Tort and Contract [1953] [hereinafter Borderland]; Note, The Elastic Concept of Tort and Contract As Applied By the Courts of New York, 14 Brooklyn L Rev 196 [1948].)
These borderland situations most often arise where the parties’ relationship initially is formed by contract, but there is a claim that the contract was performed negligently. That is the case here. Holmes owed no duty to 810 prior to their contract; once they had contracted, however, Holmes had certain obligations to 810, including a duty to make timely reports to the fire department. The question is whether Holmes’ failure to report, allegedly the result of negligence, is a breach of contract, a tort, or both.
Though the line separating tort and contract claims may be elusive, the classification can be consequential, affecting for example the applicable Statute of Limitations, requisite proof and measure of damages. In the present case, classification of 810’s claims bears most directly on the availability of contribution.
This Court has identified several guideposts for separating tort from contract claims.
In North Shore Bottling Co. v Schmidt & Sons (22 NY2d 171, 179), we recognized that "a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract.” A tort may arise from the breach of a legal duty independent of the contract, but merely alleging that the breach of a contract duty arose from a lack of due care will not transform a simple breach of contract into a tort (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382, 389; Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY, at 398, supra).
A legal duty independent of contractual obligations may be imposed by law as an incident to the parties’ relationship. Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties (Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY, at 399, supra; Prosser, *552 Borderland, op. cit., at 402-405). In these instances, it is policy, not the parties’ contract, that gives rise to a duty of due care (see, Prosser, Torts, at 613 [4th ed]).
In disentangling tort and contract claims, we have also considered the nature of the injury, the manner in which the injury occurred and the resulting harm (see, Bellevue S. Assocs. v HRH Constr. Corp., 78 NY2d 282, 293-295). In Bellevue, we rejected plaintiff’s attempt to ground in tort a claim that defendants supplied defective floor tiles, noting that the injury (delamination of tiles) was not personal injury or property damage; there was no abrupt, cataclysmic occurrence; and the harm was simply replacement cost of the product. Thus, where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory (id.; Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d, at 389-390, supra).
Finally, we recently acknowledged that the labels “misfeasance” and "nonfeasance” — once dispositive — should not be controlling (Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220, 226). Nonfeasance (or failure to perform a duty) was traditionally viewed as breach of contract, misfeasance (or defective performance) a matter of tort (see, Melodee Lane Lingerie Co. v American Dist. Tel. Co., 18 NY2d 57; World Trade Knitting Mills v Lido Knitting Mills, 154 AD2d 99, 105-106, and cases cited therein [alarm cases]; Prosser, Torts, at 614-618 [4th ed]). As we noted in Eaves Brooks, this distinction is largely semantical and often illogical — negligent performance may be a result of failing to act as well as doing an affirmative act improperly (see, Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d, at 226, supra).
With these guideposts in mind, we conclude that 810’s claims against Holmes are not limited to breach of contract but may also sound in tort.
Holmes’ duty to act with reasonable care is not only a function of its private contract with 810 but also stems from the nature of its services. New York City’s comprehensive scheme of fire-safety regulations requires certain buildings— including 810’s — to have central station fire service (Administrative Code of City of New York § C26-1704.5 [f], [g] [now § 27-972 (f), (g)]). Central station operators, in turn, are franchised and regulated by the City, and may be penalized for failing to transmit alarm signals, provide qualified operators, and other acts and omissions (New York City Fire Department Bureau *553 of Fire Prevention, Directive 2-83 [Aug. 8, 1983]). Fire alarm companies thus perform a service affected with a significant public interest; failure to perform the service carefully and competently can have catastrophic consequences. The nature of Holmes’ services and its relationship with its customer therefore gives rise to a duty of reasonable care that is independent of Holmes’ contractual obligations.
Our conclusion rests as well on the manner in which the injury arose in this case and the resulting harm, both typical of tort claims. In contrast to the tile purchaser in Bellevue or the general contractor in Clark-Fitzpatrick, 810 is not seeking the benefit of its contractual bargain, but instead seeks recovery of damages for a fire that spread out of control — the sort of "abrupt, cataclysmic occurrence” referred to in Bellevue.
Having concluded the 810’s claims lie in tort as well as contract, we next consider the effect of the contractual clauses limiting Holmes’ liability to its customer.
III.
 As an affirmative defense to 810’s claims, Holmes relies on the contractual exculpatory and limitation of liability clauses, urging that its liability should be limited to $55.50. We agree with the Appellate Division that the clauses are unenforceable against gross negligence and that there is an issue of fact as to Holmes’ gross negligence.
Absent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced (Melodee Lane Lingerie Co. v American Dist. Tel. Co., 18 NY2d 57, 69, supra; Ciofalo v Vic Tanney Gyms, 10 NY2d 294, 297-298).[2] Thus, we have previously upheld contractual language in an alarm contract limiting the customer’s *554 damages to $50 (Florence v Merchants Cent. Alarm. Co., 51 NY2d 793), and indeed have suggested that limitations on liability help keep alarm services affordable (Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d, at 227, supra). Holmes’ exculpatory clause is therefore enforceable against claims of ordinary negligence.
It is the public policy of this State, however, that a party may not insulate itself from damages caused by grossly negligent conduct (Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384-385; Gross v Sweet, 49 NY2d 102, 106). This applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum.
Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must "smack[ ] of intentional wrongdoing” (Kalisch-Jarcho, Inc. v City of New York, 58 NY2d, at 385, supra). It is conduct that evinces a reckless indifference to the rights of others (id.; see also, Restatement [Second] of Contracts § 195 [1] [intentional or reckless conduct vitiates contractual term limiting liability]).
In a related context, the Legislature has expressly adopted a reckless indifference standard. Under CPLR article 16, a joint tortfeasor whose culpability is 50% or less is not jointly liable for all of plaintiff’s noneconomic damages, but severally liable for its proportionate share (CPLR 1601 [1]). This limitation of liability, however, does not apply to a person who acted with "reckless disregard for the safety of others.” (CPLR 1602 [7].)
Just such a standard is applicable here. We therefore conclude — as did the trial court and Appellate Division — that while Holmes’ exculpatory and limitation of liability clauses are enforceable against claims of ordinary negligence, those clauses cannot restrict Holmes’ liability for conduct evincing a reckless disregard for its customers’ rights.[3]
The court’s role on a motion for summary judgment is to determine whether there is a material factual issue to be tried, not to resolve it (Sillman v Twentieth Century-Fox Film *555 Corp., 3 NY2d 395, 404). The motion should be granted only if the movant is entitled to judgment as a matter of law (see, Ugarriza v Schmieder, 46 NY2d 471, 474). Where different conclusions can reasonably be drawn from the evidence, the motion should be denied (see, Siegel, NY Prac, at 407 [2d ed]). That is the case here.
Holmes’ view of the evidence is that the company’s conduct did not rise to the level of reckless indifference. Holmes urges that the dispatcher’s failure to report the alarms was the result of a mere miscommunication, a mistake caused in part by the engineer’s confusing instructions. Another reasonable view of the evidence, however, is propounded by 810: that instead of pausing to dispel any confusion surrounding the subscriber’s instruction to activate its system, the dispatcher — without verification or investigation — rushed to his own conclusion, recklessly indifferent to the consequences that might flow from a misperception.[4]
Whether this indeed is a case of a simple mistake or reckless indifference is for a jury to determine. The Appellate Division therefore properly reversed Supreme Court’s grant of summary judgment in Holmes’ favor.
IV.
In addition to 810’s direct claims for damages, essentially two classes of contribution claims have been asserted against Holmes: first, the other alarm defendants seek contribution from Holmes in the event they are found liable to 810 in its action, and second, 810 seeks contribution from Holmes in the event it is found liable to the tenants in their actions. All contribution claims were dismissed by Supreme Court, but certain of those claims were reinstated by the Appellate Division contingent on a finding at trial that Holmes was grossly negligent. We conclude that certain of those claims were correctly dismissed, and others should be reinstated.[5]
Contribution enables a joint tortfeasor that has paid more *556 than its equitable share of damages to recover the excess from the other tortfeasors. The need for contribution arises from the rule of law that tortfeasors generally are jointly and severally liable for a judgment, meaning that each is responsible for the full amount regardless of culpability.[6]
At common law there was no contribution. Plaintiff could recover the entire judgment from any of the tortfeasors — even one only slightly at fault — and defendant was without recourse. Indeed, plaintiff was not even required to sue all the wrongdoers.
Two developments in the law of contribution, neither altogether satisfactory, preceded our landmark decision in Dole v Dow Chem. Co. (30 NY2d 143). First, a statute permitted pro rata apportionment of the loss against tortfeasors subject to the same judgment (CPLR former 1401, repealed by L 1974, ch 742, § 1). But the efficacy of this statute depended on the willingness of plaintiff to sue all wrongdoers — defendants had no mechanism for impleading culpable parties. Moreover, the apportionment was purely pro rata, not in proportion to fault. Second, the "active-passive” test, developed by case law, permitted a defendant who was "passively” negligent to implead an "active” tortfeasor. But the contribution was always 100% (in effect, full indemnification), and the test was sometimes difficult to apply.
Dole v Dow, and its subsequent codification as CPLR article 14, reformed the contribution rules, making them more equitable. Any tortfeasor who pays more than its fair share of a judgment — as apportioned by the factfinder in terms of relative culpability — may recover the excess from the others (CPLR 1401, 1402). Moreover, a defendant may implead another wrongdoer and claim contribution in the main action, or may seek contribution in a separate action (CPLR 1403). Although plaintiffs’ rights are generally unaffected (see, CPLR 1404 [a]), the loss is more equitably distributed among the culpable parties, according to their degree of fault. The goal of *557 contribution, as announced in Dole and applied since, is fairness to tortfeasors who are jointly liable.
Against this background, we turn to the two classes of contribution claims asserted against Holmes.
Alarm Defendants’ Contribution Claims Against Holmes
In 810’s suit against Holmes and other alarm-related entities, the alarm-related defendants seek contribution from Holmes in the event they are found liable.
Holmes first claims that its liability to 810 can only be for breach of contract, and citing Board of Educ. v Sargent, Webster, Crenshaw & Folley (71 NY2d 21) contends that contribution is unavailable. While Sargent makes clear that contribution does not lie in contract cases, 810’s claim — as previously discussed — also sounds in tort. The nature of this action therefore does not of itself bar contribution.
Holmes further argues that it owed no duty — contractual or otherwise — to these defendants, and therefore cannot be required to contribute to a judgment. In Schauer v Joyce (54 NY2d 1), we rejected just such a contention. There, the plaintiff (Mrs. Schauer) sued attorney Joyce for legal malpractice, and he in turn impleaded attorney Gent, who handled the matter after Joyce’s discharge and allegedly aggravated the situation. We held:
"Gent maintains that he was not in contractual privity with appellant Joyce and that there is no other basis on which it can be said that he owed a duty to Joyce. This misses the point. The relevant question under CPLR 1401 and Dole is not whether Gent owed a duty to Joyce, but whether Gent and Joyce each owed a duty to Mrs. Schauer, and by breaching their respective duties contributed to her ultimate injuries.”
(Id., at 5; see also, Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., 71 NY2d 599; Rosner v Paley, 65 NY2d 736, 738.) As we noted in Rogers v Dorchester Assocs. (32 NY2d 553, 564): "The rule of apportionment applies when two or more tort-feasors have shared, albeit in various degrees, in the responsibility by their conduct or omissions in causing an accident, in violation of the duties they respectively owed to the injured person.”
That Holmes owed no duty to the alarm defendants is *558 thus immaterial if it breached a duty it owed to the injured person — plaintiff 810 — and thereby contributed to 810’s injury. In that we have concluded Holmes did owe such a duty, plainly the alarm defendants may seek contribution from Holmes.
The question remains whether contribution is activated only upon a finding that Holmes was grossly negligent (as the Appellate Division concluded) or whether a finding of ordinary negligence would suffice.
In contribution cases, we have drawn a distinction between the absence of liability to an injured party, and the absence of a duty (see, e.g., Garrett v Holiday Inns, 58 NY2d 253, 259). Often, the absence of direct liability to plaintiff is merely the result of a special defense, such as the Statute of Limitations or the exclusivity of workers’ compensation, and not because defendant was free of fault (see, e.g., Garrett v Holiday Inns, supra; Klinger v Dudley, 41 NY2d 362). In such cases, we have held that codefendants may seek contribution from the joint wrongdoer, despite the wrongdoer’s own defense to plaintiff’s claim. This principle is fully in accord with the rationale of Dole, which promotes equitable distribution of the loss in proportion to actual fault.
To the extent Holmes’ exculpatory clause insulates it from liability for ordinary negligence, we view it as akin to a special defense that does not affect the codefendants’ ability to obtain contribution. Although Holmes’ direct liability to 810 (by virtue of the exculpatory clause) is triggered only upon gross negligence, its duty is to avoid ordinary negligence. Upon breach of that duty, fairness requires that Holmes contribute to the judgment in proportion to its culpability. Indeed, it would be patently unfair to abrogate the alarm-related defendants’ right to contribution based on an exculpatory clause to which they were not a party (see, Franzek v Calspan Corp., 78 AD2d 134).
The alarm-related defendants also seek contribution from Holmes in the tenant actions. Holmes did not have a duty to the tenants (see, Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra), nor did it have a duty to the alarm defendants. Those contribution claims were thus properly dismissed.
810’s Contribution Claims Against Holmes
In the actions it is defending against tenants, 810 seeks *559 contribution from Holmes. Holmes argues that since it owes no duty to the plaintiff tenants (see, Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220, supra), it cannot be forced to contribute to a judgment they may obtain against 810. While contribution is usually predicated on breach of a duty to plaintiff, we have also recognized that contribution may be based on a duty owing defendant.
In Garrett v Holiday Inns (58 NY2d 253, supra), a motel fire led to lawsuits by guests against the motel and the town. We found that the town had no duty to the guests upon which it could be sued, and affirmed dismissal of the complaint against it (Garrett v Town of Greece, 55 NY2d 774, affg on opn below 78 AD2d 773). The motel nevertheless sought contribution from the town in the actions it was defending against the guests, claiming that the town owed it an independent, special duty. We held that contribution was available:
"If an independent obligation can be found on the part of a concurrent wrongdoer to prevent foreseeable harm, he should be held responsible for the portion of the damage attributable to his negligence, despite the fact that the duty violated was not one owing directly to the injured person.” (58 NY2d, at 261.)
In Garrett, it was the town’s duty to the defendant motel, not to the plaintiff guests, that triggered the motel’s right to contribution. Similarly, Holmes’ duty to 810 requires it to contribute, in proportion to its fault, to any judgment obtained by the tenants against 810.
Here too there is an issue whether the obligation to contribute attaches upon a finding of gross negligence or ordinary negligence. Where a defendant agrees in advance to waive contribution from a codefendant, that agreement is enforceable to the extent it does not affect the rights of one not a party to the agreement (see, Rogers v Dorchester Assocs., 32 NY2d 553, 564, supra). However, in the absence of such agreement (or in the case of an unenforceable agreement), the usual rule applies — contribution is triggered upon a finding of ordinary negligence.
In Melodee Lane (18 NY2d, at 68, supra), we held that an alarm customer’s right to indemnification from the alarm company was circumscribed by the contract’s limitation of liability, but found the limitation unenforceable; therefore the customer’s right to indemnity was unaffected. We reach a *560 similar result here. As the Appellate Division correctly concluded, Holmes would have to contribute to the judgment against 810 only if it were found grossly negligent.
In sum, with respect to 810’s action against Holmes, the Appellate Division correctly denied summary judgment for Holmes; the contribution claims of the alarm-related defendants should be reinstated on a finding of ordinary negligence. With respect to the various tenant actions, 810’s contribution claims should be reinstated on a finding of gross negligence; the contribution claims of the remaining codefendants against Holmes were correctly dismissed.
Accordingly, the Appellate Division order should be modified, without costs, in accordance with this opinion and, as so modified, affirmed. The certified questions should be answered in the negative.
Chief Judge Wachtler and Judges Hancock, Jr., Bellacosa and Yesawich, Jr.,* concur; Judges Simons and Titone taking no part.
Order modified, etc.

. In addition to negligence and breach of contract claims, 810 sued Holmes under strict tort liability and breach of warranty theories. These too were dismissed. We affirm the dismissal of these claims as 810 failed to make a sufficient showing in support of these claims.

. In Melodee Lane (18 NY2d, at 68-70, supra), the Court held that the predecessor to General Obligations Law § 5-323 was applicable to a sprinkler alarm contract. That statute declares that exculpatory clauses for ordinary negligence in contracts for work or services "rendered in connection with the construction, maintenance and repair of real property or its appurtenances, shall be deemed to be void as against public policy and wholly unenforceable.” The Court, however, held that limitations of liability are valid notwithstanding this statute if the customer is given an option to purchase protection for full liability. We need not decide whether the statute is applicable here because the Holmes/810 contract provides the option (compare, Florence v Merchants Cent. Alarm Co., 51 NY2d 793, 795 [burglar alarm limitation of liability valid, though no option provided, because contract not within the statute]).

. Holmes urges that, with the advent of comparative negligence in 1974, the need for distinctions between "gross” and "ordinary” negligence has disappeared, and no reason remains for applying such a distinction to the parties’ contract. Whatever may be the case in other contexts, public policy precludes enforcement of contract clauses exonerating a party from its reckless indifference to the rights of others, whether or not termed "gross negligence.” (See, Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, supra; Gross v Sweet, 49 NY2d 102, supra.)

. See, by contrast, Gutter Furs v Jewelers Protection Servs. (79 NY2d 1027 [decided today]). There, a subscriber charged a burglar alarm company with inadequate and ineffective service, owing to improper design of the system and failure to conduct a post-installation inspection. Despite assertions of "gross” deviation from professional standards, the subscriber’s allegations of misconduct were no more than ordinary negligence. The evidence cannot reasonably be viewed as indicating the reckless indifference that vitiates a contractual exculpatory clause.

. On this appeal, certain parties that have settled the claims against *556 them also seek contribution. Their claims for contribution are barred by statute (General Obligations Law § 15-108 [c]; see also, Glaser v Fortunoff of Westbury Corp., 71 NY2d 643).

. In 1986, the Legislature enacted CPLR article 16, which provides that a tortfeasor whose culpability is apportioned at 50% or less is liable only for its proportionate share of noneconomic loss (e.g., pain and suffering, mental anguish) (CPLR 1600,1601 [1]). However, this modification of the traditional joint-and-several liability rule is applicable only in personal injury actions (CPLR 1601 [1]).

 Designated pursuant to NY Constitution, article VI, § 2.