OPINION OF THE COURT
Jane S. Solomon, J.
Defendants in this wrongful death action move for summary judgment dismissing the complaint. Plaintiff seeks leave to amend the notice of claim she filed with the defendant City of New York (City), and to amend her complaint to allege gross negligence by the defendant A & P Burglar Alarm Systems, Inc. (A & P). For the reasons stated below, the motion for summary judgment by A & P is granted, and the City’s motion is denied. Plaintiff’s motion for leave to amend the complaint is denied and her motion to amend the notice of claim is granted.
BACKGROUND
Before she was shot by an intruder in her Avon Products Store on East Houston Street on Manhattan’s Lower East Side, Kyle Meriwether pushed a silent alarm button to signify an armed robbery, which alarm registered at the A & P office. Meriwether had a contract with A & P whereby A & P had agreed to install, service and monitor a commercial alarm system at the Avon Products office.
The alarm system included silent panic buttons, which, *125 when activated, signalled A & P’s central monitoring station that an emergency existed in the office. A & P was to, and would, in turn, contact the City’s 911 emergency operator. Under the contract, the parties agreed that A & P assumed no liability for negligent performance of its services.
On November 8, 1991, when Ms. Meriwether was shot (from which wound she died), the panic button was activated at approximately 12:24 p.m. Stanley Thomas, A & P’s principal owner and operator, received the alarm, called 911, and reported that there was a holdup at 240 East Houston Street (an address with which the tape transcript reflects that the operator struggled), at "Avon Products,” and he also gave the 911 operator A & P’s identification number (which was on file with the 911 service) and A & P’s telephone number. The transcript of the tape recording indicates that the call was initiated at 12:26:42 p.m., approximately two minutes after the panic button signal,[1] during which time Thomas testified he had traced the signal to his customer records.
Plaintiff alleges that A & P was negligent in that Thomas took too much time to call 911, that he failed to effectively enunciate his report to the 911 operator or spell out "Avon Products” or "Houston Street,” that he failed to inform the operator that the office was located on the ground floor, and that he failed to make a follow-up call to the 911 operator when nobody at Avon Products answered his calls one hour after the alarm. Notwithstanding these alleged failures by A & P, the 911 operator correctly noted the address and the nature of the emergency, and then relayed a report to the police.
The record indicates that, at 12:32 p.m., a police dispatcher directed a radio patrol car to respond: "at 240 East Houston, I have a holdup alarm at Eva Productions.” The patrol car proceeded to the correct address and arrived there approximately four minutes after receiving the call. The door was locked; the officers looked through the plate glass door and facade, and saw no sign of disturbance. One of the police officers, Officer Drago, testified at his deposition that he recognized the address as that of Avon Products, where he had responded to the alarm on at least two other occasions. *126 However, the record also indicates that the officers continued to look for a business called Eva Productions. The officers failed to notice the A & P decal on the front door which gave the alarm company’s telephone number.
The officers questioned people in neighboring stores and a woman who was awaiting access to the store. She informed them that a man had walked out of the store 5 to 10 minutes earlier and told her that the "manager” had stepped out for a few minutes.[2] Before leaving the scene, Officer Drago called the dispatcher to state that there was no Eva Productions at 240 East Houston Street. According to the transcript, the dispatcher insisted "Eva” was correct and when Drago asked if the dispatcher had a call back number, the dispatcher answered "No. It’s the alarm company.” The dispatcher, saying "Okay. Forget it. I don’t know what they meant to spell” called the incident "a 90” — unfounded.
At approximately 2:15 p.m., a worker located in the office below Avon Products called 911 and reported blood coming from the Avon Products office above. At 2:18 p.m. and again at 2:19 p.m., other calls were made to 911 reporting that a woman was found in a pool of blood and that she apparently had been shot. (It is not clear whether the neighbors who got into the store and found Meriwether "bleeding to death” in the only closed interior space, a bathroom which could not be seen from the street, believed she was alive.) In several instances, the transcripts indicate that the 911 operators taking these calls engaged in rude and unprofessional colloquy. Moreover, according to a City investigation of the event, two different operators failed to connect callers to an EMS receiving operator.
At approximately 2:22 p.m., a patrol car responded to a police dispatcher’s transmission that a shooting had occurred at the Avon Products office, and arrived at the scene no later than 2:23 p.m. An EMS ambulance arrived approximately four minutes later, and Ms. Meriwether was pronounced dead on the scene. Following the Police Department investigation of *127 events surrounding the incident, including the conduct of the five 911 operators involved, four of the operators were disciplined and transferred to other duties within the Communications Division, while the fifth resigned after disciplinary charges against her were substantiated.
Plaintiff alleges that the City, through its 911 operators and police officers, was negligent and grossly negligent in the manner in which the 911 operators received, dispatched and investigated the emergency 911 calls placed first by A & P and then by others and that this negligence led to Meriwether’s death. In particular, she claims there were failures to follow the City’s own 911 regulations with respect to verifying the name of the store, and providing the responding officers with the call back number of A & P.
On January 22, 1992, the plaintiff served a notice of claim on the City claiming damages in the amount of $5 million. Plaintiff served her summons and complaint on the defendants on or about May 27, 1994. As described above, the complaint alleges wrongful death resulting from ordinary negligence and gross negligence by the City and ordinary negligence by A & P; it also contains a claim for Meriwether’s conscious pain and suffering.
Discovery being complete, the defendants now move for summary judgment. A & P’s motion is premised on the arguments that since it is absolved contractually of liability for ordinary negligence, the facts do not support a claim against it and that plaintiff has failed to establish causation. The City’s motion is twofold. First, the City argues that it did not owe a "special duty” to the decedent, and therefore plaintiff has failed to state a cause of action, citing Cuffy v City of New York (69 NY2d 255 [1987]). Second, the City argues that the plaintiff’s cause of action for conscious pain and suffering should be dismissed because it was not included in the notice of claim as required under General Municipal Law § 50-e. Plaintiff cross-moves for leave to amend her notice of claim, and for leave to amend her complaint to allege gross negligence by A & P.
DISCUSSION
Summary judgment is appropriate where the moving party shows that the cause of action or defense is established sufficiently so as to require that the court direct judgment in favor of a party as a matter of law. (CPLR 3212 [b].) When *128 considering a motion for summary judgment, the court will construe the evidence in the light most favorable to the opposing party. (Siegel, NY Prac § 281, at 411 [2d ed].)

The Motions Concerning A & P

An exculpatory clause in a security alarm contract is enforceable (Hanover Ins. Co. v D & W Cent. Sta. Alarm Co., 164 AD2d 112 [1st Dept 1990]; Florence v Merchants Cent. Alarm Co., 73 AD2d 869 [1st Dept], affd 51 NY2d 793 [1980]); however, "to the extent that such agreements ' "purport to grant exemption for liability for willful or grossly negligent acts[,] they have been viewed as wholly void” ’ ”. (Hanover Ins. Co. v D & W Cent. Sta. Alarm Co., at 115, supra; see, Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384-385 [1983] [New York public policy does not permit a party to insulate itself from damages caused by grossly negligent conduct].) To establish liability, it is not sufficient for a plaintiff merely to use the phrase "gross negligence,” rather plaintiff must present evidence that gross negligence occurred. (Feldman Furs v Jewelers Protection Servs., 134 AD2d 171, 172 [1st Dept 1987].) "Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must 'smack[ ] of intentional wrongdoing.’ ” (Sommer v Federal Signal Corp., 79 NY2d 540, 554 [1992], quoting Kalisch-Jarcho, Inc. v City of New York, supra.)
New York courts have found that the failure of an alarm company to provide a timely response to an alarm signal, as alleged by plaintiff, constitutes ordinary negligence only. (Silberberg Galleries v Holmes Protection, index No. 5848/92 [Sup Ct, NY County 1993], affd 203 AD2d 36, affd 84 NY2d 859.) Likewise, plaintiff’s other allegations respecting Thomas’ conduct, even if accepted as true, would only support a claim for ordinary negligence, as to which A & P may not be sued.
Generally, leave to amend the complaint is freely given, absent prejudice or surprise. (CPLR 3025 [b].) "However, leave will not be given where the proposed amendments do not state valid grounds for relief’. (Probst v Albert Einstein Med. Ctr., 82 AD2d 739 [1st Dept 1981].) As stated above, plaintiff’s allegations and the facts adduced in discovery do not support a claim of gross negligence. Accordingly, plaintiff’s motion to amend her complaint to add a cause of action against A & P for gross negligence is denied and A & P’s motion for summary judgment is granted.
*129 As a result, there is no need to reach A & P’s causation argument, although it might be noted that, since the police officers proceeded directly to the decedent’s office and investigated, the propriety of which is at issue in the claim against the City, the plaintiff fails to establish that, had Thomas performed precisely as plaintiff, or plaintiff’s expert, recommends, the tragedy might have been avoided.

The City’s Motion For Summary Judgment

The issue on this motion for summary judgment is whether the City can be absolved from its obligation to properly respond to a 911 emergency call once it assumes an affirmative duty to act where the person in need of assistance has no personal contact with the City’s personnel and receives no personal promise that help is on the way. The City asserts that the answer is "yes,” arguing that, as a matter of law, it owed no duty to Ms. Meriwether, and that any alleged failure by its agents to follow proper procedures is not actionable. As explained below, the City’s position is wrong.
"[A] municipality cannot be held liable for negligence in the performance of a governmental function * * * unless a special relationship existed between the municipality and the injured party”. (De Long v County of Erie, 60 NY2d 296, 304 [1983].) Absent a "special relationship,” courts will not examine the reasonableness of the municipality’s actions. (Sorichetti v City of New York, 65 NY2d 461, 468 [1985].) The special relationship arises "where a promise of protection [is] made to a particular citizen” and there is "proof’ that the victim "relied on the promise and that his reliance was causally related to the harm he suffered.” (Cuffy v City of New York, supra, 69 NY2d, at 258.)
The Court of Appeals has recognized that a special duty arises where a 911 emergency call system is offered to a citizen who is told that help is on the way when she calls for assistance. (De Long v County of Erie, 89 AD2d 376 [4th Dept 1982], affd 60 NY2d 296, supra.) In De Long, where a woman called 911 when she noticed someone trying to break into her house, recovery was permitted on the failure of the recipient of the call to follow proper procedures, as a result of which the police went to the wrong town, and the error was not caught until the woman had been fatally stabbed.
In De Long (supra), the defendants, like the City here, argued that they assumed no special duty to protect the *130 decedent by maintaining a 911 emergency system and accepting the victim’s call. The Fourth Department rejected this argument, writing that "[t]he complaint writer’s acceptance of the call, his transmittal of the complaint card to the dispatcher and the dispatcher’s radio calls to police cars were affirmative actions setting the emergency machinery in motion. This voluntary assumption of a duty to act carried with it the obligation to act with reasonable care”. (89 AD2d, at 384, supra.) De Long, however, does not end the inquiry because there the victim called the 911 emergency service herself, and personally obtained the operator’s assurance of assistance. As the Court noted, "[i]t is not the establishment of the emergency call system * * * standing alone, which creates the duty. It is the holding out of the 911 number as one to be called by someone in need of assistance, Amalia DeLong’s placing of the call in reliance on that holding out, and her further reliance on the response to her plea for immediate help: 'Okay right away.’ ” (Supra, at 384.)
The next question, then, is whether a special relationship can be found here, where Ms. Meriwether did not pick up the phone and call 911 herself. The City argues not, and, in support of its position, relies primarily on Cuffy (supra), in which the Court of Appeals defined a special relationship as consisting of four elements: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking”. (69 NY2d, at 260, supra.)
The City, however, ignores that the four-part test in Cuffy (supra) does not neatly describe the circumstances under which the courts have found a special relationship. Thus, in Sorichetti (supra), the Court of Appeals held that the government owed a special duty to a mother and her injured child who was attacked by her father, where the father violated an order of protection and the police were made aware of the possibility of such a violation and failed to act. Also, in Florence v Goldberg (44 NY2d 189 [1978]), the Court of Appeals decided that where a municipality voluntarily assumed a duty to protect children crossing designated intersections when traveling to school, it could be held liable for injuries suffered by a child as the result of its negligent failure to *131 station a guard at such an intersection. In Sorichetti and Florence, there was no direct contact between the injured person and the government and reliance was inferred from the factual circumstances of each case. (But cf., Yearwood v Town of Brighton, 101 AD2d 498 [4th Dept]), affd 64 NY2d 667 [1984].)
In fact, in Cuffy (supra), the Court of Appeals noted that "the direct contact requirement has not been applied in an overly rigid manner” (69 NY2d, at 261, supra) and that "the proper application of the 'direct contact’ requirement depends on the peculiar circumstances of each case, all of which must be considered in light of the policies underlying the narrow 'special duty’ doctrine.” (Supra, at 262.)
Also in support of its assertion that plaintiffs claim is not actionable because Ms. Meriwether could not have justifiably relied on City employees to help her because she did not speak to them and receive their assurances, the City refers to Helman v County of Warren (111 AD2d 560 [3d Dept 1985], affd 67 NY2d 799 [1986]), in which the Third Department found that defendant owed no special duty to plaintiff, whose motorcycle shop was damaged by fire, where an unsolicited neighbor contacted 911 and received assurances of help from the operator. While the plaintiff in Helman argued that the intermediary who contacted 911 acted as his agent, the Court refused to find any agency relationship noting that "plaintiffs contention amounts to an assertion that liability would attach so long as anyone dialed 911 for assistance on his behalf.” (Supra, at 562.) Likewise, in Merced v City of New York (75 NY2d 798 [1990]), another case cited by the City, the Court of Appeals held that there could be no special duty where third parties reported a domestic violence incident to police and "there was no evidence that the decedent contacted the municipality’s agents or relied on any assurances of assistance”. (Supra, at 800.)
There has, however, not been a case examining whether the victim may claim a special relationship with the government, and may rely on it for help, when the call to a 911 service is made by a commercial alarm company hired for that specific purpose. That situation differs significantly from both Helman and Merced (supra), where there was no evidence that the injured parties sought the third parties’ contacts with emergency assistance, or even knew that calls for help had been made for their benefit. Rather, here, Ms. Meriwether knew that the alarm company was going to contact 911 when *132 she hit the panic button for, not only was that what she contracted for, but the police had responded before, on two occasions when she had set off the alarm. Accordingly, it cannot be said that Ms. Meriwether was not relying, with justification, on the government to rescue her.
Because A & P was specifically engaged to contact 911 in an emergency situation, its customers should be allowed to rely on the government to respond to calls made by it as agent as if the customer had called directly when the alarm company’s conduct comports with its contractual obligation to be a prompt intermediary as A & P did here. Once the municipality accepts the call and responds to the agent, the municipality should be obligated to the principal as if the principal herself had called for help. As a matter of policy, a citizen’s decision to hire an alarm company should not, by itself, shield a municipality for acts of negligence for which it otherwise would be responsible.
Moreover, to the extent the City also seeks summary judgment on the merits, it submits no evidence, such as an autopsy report, to establish that the failures of its agents did not cause Ms. Meriwether’s death. Plaintiff should accordingly be allowed to try to prove that those failures were negligent and proximately caused Ms. Meriwether to die from her wound. This is because there is a triable issue of fact concerning whether Ms. Meriwether died instantly, or bled to death between the time that the earliest responding officers appeared and when the ambulance arrived almost two hours later and, in my judgment, the conduct of all City personnel is integrally connected to the event.
Thus, although the City may succeed at trial because plaintiff may not be able to link the failures of the City’s employees to any increased risk to Ms. Meriwether, this factual issue cannot now be resolved. This is particularly so because in a death case, a plaintiff is generally not held to as high a degree of proof as where the plaintiff can describe the occurrence herself. (See, Noseworthy v City of New York, 298 NY 76, 80 [1948].) Accordingly, the City’s motion for summary judgment is denied.

Amendment Of The Notice Of Claim

The notice of claim, served timely on the City, asserts that the City defendants "negligently, carelessly and recklessly responded to a panic alarm set off * * * failed to investigate or enter the premises and, as a result, Kyle Meriwether was *133 murdered,” but makes no reference to conscious pain and suffering, although the complaint seeks damages for same.
The City argues that the cause of action for conscious pain and suffering should be dismissed because the notice of claim did not include it, the notice of claim cannot be amended to include a new claim, and it is too late to amend or serve a new notice because the applicable Statute of Limitations has expired. In response, plaintiff asserts that the City had sufficient notice of the omitted claim and therefore was not prejudiced by the delay, and that she may amend under the relation back doctrine of CPLR 203 (f).
Section 50-e (6) of the General Municipal Law permits the court to correct or disregard a mistake, omission, irregularity or defect in a notice of claim made in good faith where the public corporation has not been prejudiced thereby. (D'Alessandro v New York City Tr. Auth., 83 NY2d 891 [1994].) Here, there is no allegation of bad faith on the part of plaintiff, and contrary to the City’s argument, the amendment sought does not substantially alter plaintiff’s claim or prejudice the City. Indeed, the amendment is predicated on the same facts contained in the timely notice. (See, Feiler v City of New York, 107 NYS2d 238 [Sup Ct, NY County 1951]; see also, 62 NY Jur 2d, Government Tort Liability, § 355, at 661.)
Furthermore, the expiration of the Statute of Limitations does not prevent a plaintiff from amending the notice of claim where there is no prejudice to the opposing party. (See, Dodd v Warren, 110 AD2d 807 [2d Dept 1985] [permitting the amendment of the notice of claim, after the expiration of the Statute of Limitations, to add derivative claims based on facts already included in the notice]; Montana v Incorporated Vil. of Lynbrook, 23 AD2d 585 [2d Dept 1965] [undue delay in making application to amend will not defeat it in the absence of prejudice to the opposing party].) In any event, because the added claim arises out of the same transactions and occurrences as the claims asserted in the original notice, it may be interposed timely under the relation back provision of CPLR 203 (f). (Sullivan v Board of Educ., 154 AD2d 664 [2d Dept 1989].)
In view of the above, plaintiff’s cross motion for leave to serve an amended notice of claim is granted.
CONCLUSION
As explained above, A & P’s motion for summary judgment dismissing the complaint is granted, and the Clerk of the *134 Court is directed to enter judgment dismissing the complaint and any cross claims against A & P. The City’s motion for summary judgment is denied. The amended notice of claim, as attached to plaintiffs cross motion, is deemed timely, nunc pro tunc upon entry of this order.

. Plaintiff has alleged that Thomas reported the alarm to 911 in approximately two minutes, or that Thomas may have waited as long as eight minutes before reporting the alarm. However, there is no evidence submitted to support the latter statement, so that the court accepts the former version of the facts.

. The deposition testimony of the two police officers is inconsistent as to when their conversation with the woman took place. Officer Nieves testified that they spoke to the woman twice,, once right after they got out of their car, at which time she simply asked them if she should move, and then again before they left, when they had the conversation about the man leaving the store. Officer Drago, however, only described the latter conversation, which he testified took place immediately after they got out of their car.