■ ABACUS FEDERAL SAVINGS BANK, Respondent, v ADT SECURITY SERVICES, INC., et al., Appellants, et al., Defendants. [908 NYS2d 654]—

Orders, Supreme Court, New York County (Ira Gammerman, J.H.O.), entered July 31, 2009, which denied so much of the motions of defendants ADT and Diebold as sought to dismiss the causes of action for breach of contract and gross negligence, unanimously reversed, on the law, with costs, the motions granted in their entirety, and the amended complaint dismissed against these defendants. The Clerk is directed to enter judgment accordingly.

This action arises out of an overnight burglary of plaintiff's bank and vault in 2004. On the date of the loss, ADT was obligated by written agreements to provide a central station burglar alarm system to protect plaintiff's premises. At the same time, Diebold was obligated by a separate agreement to monitor the signals of ADT's reporting system, and to provide the equipment necessary to perform such monitoring as well as additional security alarm equipment for redundant central station security monitoring. The breach-of-contract cause of action alleges these defendants' failures to provide security protection, to check the system to ensure its viability, and to notify plaintiff and the police upon receipt of alarms, suspicious signals or abnormalities within the system. The gross negligence cause of action is based upon the same failures coupled with the fact that the burglars were able to carry out their crime without interruption over an extended period of time.

Both defendants moved for dismissal of the gross negligence claims on the ground that plaintiff did not allege a breach of any duty independent of defendants' contractual obligations, and dismissal of the contract claims on the basis of the risk allocation provisions of the respective agreements. Diebold further asserted that its alleged failure to receive or act upon alarm signals did not constitute gross negligence as a matter of law, and that plaintiff lacked standing to assert claims for losses sustained by its safe deposit customers. The court denied these portions of the motions, finding the allegations facially sufficient for gross negligence and sufficient as a basis for the breach-of-contract claim. We disagree.

The agreements contained provisions that effectively exonerated these defendants from liability for their own negligence or limited the damages recoverable therefrom to nominal sums. Such contractual provisions are generally enforceable under New York law, although as a matter of public policy, a party may not contractually insulate itself from liability caused by its own grossly negligent conduct (*see Colnaghi, U.S.A. v Jewelers Protection Servs.*, 81 NY2d 821, 823 [1993]). Gross negligence, when invoked to pierce a contractual limitation of liability, must smack of intentional wrongdoing (*Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377, 385 [1983]) by evincing a reckless indifference to the rights of others (*see Sommer v Federal Signal Corp.*, 79 NY2d 540, 554 [1992]). This Court has consistently held that an alarm company's delayed or inadequate response to an alarm signal, without more, is not gross negligence (*see e.g. Hartford Ins. Co. v Holmes Protection Group*, 250 AD2d 526, 528 [1998]; *Consumers Distrib. Co. v Baker Protective Servs.*, 202 AD2d 327 [1994], *lv denied* 84 NY2d 811 [1994]). Similarly, plaintiff's allegations that these defendants provided an inadequate security system, which they also failed to inspect, amount to nothing more than claims of ordinary negligence as opposed to gross negligence (*see e.g. David Gutter Furs v Jewelers Protection Servs.*, 79 NY2d 1027 [1992]).

Plaintiff cites *Sommer* for the proposition that an alarm company can be held liable in tort for its gross failure to perform contractual services. In *Sommer*, the Court held that a fire alarm company could be held liable in tort for its gross failure to perform its contractual services properly. As the Court of Appeals explained, *Sommer* was based upon reasoning that the fire alarm company's duty, separate and apart from its contractual obligations, arose from the very nature of its services—to protect people and property from physical harm (*see New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 317 [1995]). Noting the catastrophic consequences that could flow from the fire alarm company's failure to perform its contractual obligations with due care, the *Sommer* court cited the central fire station requirement set forth in the Administrative Code of the City of New York (now section 27-972 [f] and [g]) as a reflection of the public interest in the careful performance of the fire alarm services contract (*see New York Univ.*, 87 NY2d at 317). By contrast, no public interest is implicated here or in *David Gutter Furs,* a case decided the same day as *Sommer.* We, thus, find no basis for tort liability in this case.

Under its agreement with Diebold, plaintiff was required to insure the premises and their contents against perils that

included theft, and to look solely to its insurer for recovery in the event of a loss, waiving all such claims against Diebold. This waiver-of-subrogation provision constitutes a defense to all of plaintiff's claims, including gross negligence (*see Great Am. Ins. Co. of N.Y. v Simplexgrinnell LP*, 60 AD3d 456 [2009]). Although plaintiff's agreement with ADT did not contain a waiver-of-subrogation provision, it did require plaintiff to obtain its own insurance to cover the loss. In light of our holding, it is unnecessary to reach defendants' additional argument that plaintiff lacks standing to assert claims based upon losses sustained by its safe deposit customers (*see Mehlman v 592-600 Union Ave. Corp.*, 46 AD3d 338, 343 [2007]). Concur—Tom, J.P., Sweeny, Catterson, Moskowitz and DeGrasse, JJ.