18 N.Y.3d 675 (2012)
967 N.E.2d 666
944 N.Y.S.2d 443
2012 NY Slip Op 2120
ABACUS FEDERAL SAVINGS BANK, Appellant,
v.
ADT SECURITY SERVICES, INC., et al., Respondents, et al., Defendants.
No. 33.
Court of Appeals of New York.
Argued February 7, 2012.
Decided March 22, 2012.
*676 Port & Sava, Garden City (George S. Sava of counsel), for appellant.
*677 *678 Shook, Hardy & Bacon L.L.P. (Charles C. Eblen, of the Missouri bar, admitted pro hac vice, of counsel) and Calinoff & Katz, LLP, New York City, for ADT Security Services, Inc., respondent.
*679 Lester Schwab Katz & Dwyer, LLP, New York City (Dennis M. Rothman, of counsel), for Diebold, Incorporated, respondent.
Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

*680 OPINION OF THE COURT
CIPARICK, J.
Plaintiff Abacus Federal Savings Bank (Abacus) commenced this action against defendants ADT Security Services, Inc. (ADT) and Diebold, Incorporated (Diebold) to recover damages under tort and contract theories for losses incurred during a burglary of the bank. We affirm the dismissal of the complaint with one exception. We conclude that Abacus has adequately stated a cause of action for breach of contract as against ADT for its alleged losses other than losses allegedly sustained by its safe deposit box customers.
Abacus is a federally chartered savings and loan association with a branch located in Lower Manhattan (the branch). It provides a variety of deposit services, including the leasing of safe deposit boxes to its customers. Following the close of business on Saturday, March 20, 2004, burglars forced their way into the branch through a back entrance door and a second interior door. According to security camera images taken during the course of the incident, the burglars located the vault inside and, during a several hour period, used large acetylene gas tanks as blow torches to break down one of the vault's concrete and metal walls. Once in the vault, the burglars gained access to a safe storing the branch's overnight cash and over 20 safe deposit boxes belonging to Abacus' customers. The amended complaint alleges that the burglars stole $589,749.55 in cash from the safe and property valued at $926,512 from the safe deposit boxes. The police were not notified during the course of the burglary. Rather, an Abacus employee discovered what had occurred when the branch opened for business on Monday morning, March 22, 2004.
*681 Prior to the burglary, each defendant had separately contracted with Abacus to supply security services for the branch. Specifically, ADT's contract with Abacus obligated ADT to install and maintain a 24-hour industry-certified central station security system to protect the branch premises and the vault. Within the vault, ADT purported to utilize certain detectors that would identify intruder movement and the presence of smoke. ADT's security system was supposedly designed to transmit any alarm signals triggered in the vault to ADT's central monitoring system. Diebold's contract with Abacus required Diebold to provide a backup alarm system that included additional central station monitoring, another form of telephone line security and "signal monitoring," which would activate an alarm if ADT's alarm system failed to operate properly.
The gravamen of Abacus' amended complaint is that defendants violated their contractual obligations by installing woefully inadequate security systems, which they failed to inspect. Abacus further alleges that defendants knew for weeks, if not months, that the security systems in place were not working in that they were generating a series of flaws, malfunctions and false alarms. For example, in the three months preceding the burglary there were, according to an expert's affidavit Abacus submitted in opposition to defendants' motions, 17 phone line failures and a number of other occurrences that were "consistent with an intruder cutting the phone line" and "should have created an alarm event." Abacus asserts that not only did defendants fail to investigate these malfunctions, but they failed to notify anyone at the branch of the problem.
Both contracts contained clauses that exculpated defendants from liability for their own negligence and limited their liability, under all circumstances, to $250. Diebold's contract contained a clause entitled "Property Insurance and Waiver of Subrogation" where Abacus agreed to obtain insurance coverage to cover its losses in the event of a theft. The agreement between Diebold and Abacus provided that Abacus "shall look solely to its insurer for recovery of its loss and hereby waives any and all claims for such loss against Diebold" and that Abacus' insurance policy would contain a clause providing that such waiver would not invalidate the coverage. There was no similar waiver-of-subrogation clause in the contract between Abacus and ADT. Instead, their contract merely provided "that insurance, if any, covering personal injury and property loss or damage" was Abacus' responsibility to obtain.
*682 In addition to the losses incurred during the weekend of the burglary, Abacus seeks money damages for not less than $5 million for lost business as a result of the burglary, not less than $5 million for a loss of reputation in the community and not less than $1 million in punitive damages. Abacus also seeks $85,436 in costs to repair the vault and $30,000 in added security costs it absorbed. Defendants moved to dismiss the complaint, 10 causes of action in all, in its entirety. Supreme Court denied defendants' motion to dismiss the breach of contract cause of action and the gross negligence cause of action, but dismissed the remainder of the amended complaint.
Addressing the breach of contract claim, Supreme Court observed that while New York courts regularly enforce contractual provisions absolving a party from acts of its own ordinary negligence, public policy prohibits waivers of liability for gross negligence. The court concluded that since the pleadings adequately alleged that defendants were grossly negligent in their failure to respond to the burglary, Abacus could proceed to discovery on the breach of contract cause of action. Supreme Court likewise denied the motion to dismiss the tort cause of action. It further opined that Abacus has standing to assert claims based upon losses suffered by its safe deposit box customers. Defendants appealed.[*]
The Appellate Division reversed the order of Supreme Court and granted defendants' motions to dismiss the amended complaint in its entirety (see Abacus Fed. Sav. Bank v ADT Sec. Servs., Inc., 77 AD3d 431, 432 [1st Dept 2010]). In dismissing the breach of contract cause of action, the court held that the allegations in the amended complaint "amount to nothing more than claims of ordinary negligence as opposed to gross negligence" (id. at 433). The court similarly found no basis for tort liability in the complaint (see id.). Furthermore, the court concluded that, in any event, the waiver-of-subrogation provision contained in the contract between Abacus and Diebold serves as "a defense to all of plaintiff's claims" against Diebold (id. at 434). We granted Abacus leave to appeal (16 NY3d 712 [2011]) and now modify.
As a general rule, parties are free to enter into contracts that absolve a party from its own negligence (see Melodee Lane Lingerie Co. v American Dist. Tel. Co., 18 NY2d 57, 69 [1966]) *683 or that limit liability to a nominal sum (see Florence v Merchants Cent. Alarm Co., 51 NY2d 793, 795 [1980]). However, it is New York's public policy that a party cannot "insulate itself from damages caused by grossly negligent conduct" (Sommer v Federal Signal Corp., 79 NY2d 540, 554 [1992]). Therefore, exculpatory clauses and liquidated damages clauses in contracts are not enforceable against allegations of gross negligence (see id.). We have observed that "[g]ross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must `smack[ ] of intentional wrongdoing'" (id., quoting Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 385 [1983]). "It is conduct that evinces a reckless indifference to the rights of others" (id.).
We applied this standard in David Gutter Furs v Jewelers Protection Servs. (79 NY2d 1027 [1992]). In that case, the "plaintiff, a fur dealer, contracted with [the] defendant to design, install and monitor a burglar alarm system" (id. at 1028). Several weeks after plaintiff occupied its premises, furs were stolen in a nighttime burglary, but the alarm did not sound. Plaintiff commenced an action against the defendant for breach of contract and further claimed that the exculpatory and limitation of liability clauses in their contract were unenforceable because the defendant was grossly negligent (see id. at 1028-1029). We concluded that the plaintiff's allegations"that there should have been two motion detectors, instead of one, on each level; a shock sensor should have been installed; defendant should have ascertained how the inventory would be arranged; and a post-occupancy inspection should have been undertaken"only amounted to ordinary negligence as there was no issue of fact that the "defendant performed its duties with reckless indifference to [the] plaintiff's rights" (id. at 1029).
Here, in contrast, we conclude that the allegations in the amended complaint sufficiently allege conduct on the part of the defendants that, if true, constitutes gross negligence. Indeed, unlike the plaintiff in David Gutter Furs, Abacus has alleged much more than mere failure to install a proper working alarm system and inspect it. Abacus alleges that both defendants had knowledgefor weeks, if not monthsthat the equipment had been malfunctioning. Moreover, Abacus asserts that defendants not only failed to investigate the source of their equipment malfunction, but they failed to put anyone at the branch on notice of the potential security breach. Of course, these allegations may not be proved, or may be shown by defendants' evidence to *684 be less significant than they seem; but on this record, plaintiffs have alleged the type of conduct that smacks of intentional wrongdoing and evinces a reckless indifference to the rights of others (see Federal Ins. Co. v Automatic Burglar Alarm Corp., 208 AD2d 495, 496 [2d Dept 1994]).
Nevertheless, Diebold argues that the waiver-of-subrogation clause in its contract with Abacus acts as a total defense to the claims asserted by Abacus in its complaint. We agree. In Board of Educ., Union Free School Dist. No. 3, Town of Brookhaven v Valden Assoc. (46 NY2d 653 [1979]), we upheld a similar waiver-of-subrogation clause. There, we observed that the contract between the plaintiffs and the defendants required the plaintiffs to obtain insurance to cover 100% of any losses incurred on the plaintiff's property (see id. at 656). Further, the plaintiffs expressly "waive[d] all rights" to seek damages as against the defendants covered by such insurance (id.). In upholding the validity of this contract, we recognized that "[a] distinction must be drawn between contractual provisions which seek to exempt a party from liability . . . and contractual provisions. . . which in effect simply require one of the parties to the contract to provide insurance for all of the parties" (id. at 657; see also Austro v Niagara Mohawk Power Corp., 66 NY2d 674, 676 [1985]; Great Am. Ins. Co. of N.Y. v Simplexgrinnell LP, 60 AD3d 456, 456-457 [1st Dept 2009]). We discern no basis to depart from this rule here. Thus, we affirm the dismissal of the complaint as against Diebold.
ADT's contract with Abacus does not contain a similar waiver-of-subrogation clause that would act as a total defense to Abacus' claim. We note that the contract between Abacus and ADT did not require Abacus to obtain insurance to cover losses stemming from ADT's gross negligence. The decision to obtain insurance, "if any," was discretionary as to Abacus. Moreover, the contract did not contain an express waiver by Abacus to waive all rights for damages covered by insurance it may have obtained as against ADT. Thus, we reinstate the breach of contract cause of action as against ADT. In so doing, we note that the complaint only adequately states a basis upon which Abacus can recover for its own losses. As pleaded, Abacus fails to allege sufficient facts to confer standing to pursue the losses allegedly sustained by its safe deposit box customers.
Finally, we conclude that the complaint did not allege conduct that would give rise to separate liability in tort. Here, the allegations that a breach of contract occurred as a result of *685 gross negligence does not give rise to a duty independent of the contractual relationship (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987]; cf. Sommer, 79 NY2d at 551-553 [the plaintiff's breach of contract claim against the defendant fire alarm company may also sound in tort where the defendant's alleged failure to act with due care affected a significant public interest independent of its contractual obligations]).
Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating so much of plaintiff's cause of action for breach of contract as against ADT Security Services, Inc. that does not assert claims on behalf of plaintiff's safe deposit box customers and, as so modified, affirmed.
Order modified, etc.
NOTES
[*] Abacus did not cross-appeal Supreme Court's decision to dismiss the remaining eight causes of action in the complaint.