HARALD MOORE, as Trustee of the MOORE TRUST, Appellant, v J.A. BRADLEY & SONS, INC., Defendant, and INSPECTOR, LLC, Respondent. [892 NYS2d 564]—

Garry, J.

In June 2004, plaintiff contracted with defendant J.A. Bradley & Sons, Inc. (hereinafter Bradley) to perform electrical work on plaintiff's property in Johnsonville, Rensselaer County. The project included the installation of a 200-amp generator switch with a 50-amp cord, plug, and grounding in plaintiff's barn. The switch would allow plaintiff to operate a portable generator in the event of a power outage by plugging the generator into the switch, shutting off the connection to the utility's electrical power supply, and switching to power obtained from the generator. Bradley installed the switch next to a preexisting circuit breaker panel box and grounded the switch to the preexisting neutral bar in the panel box. The neutral bar was connected to the barn's preexisting electrical grounding system by a wire that ran outside and underground, where it was connected to a ground rod buried under plaintiff's asphalt-paved driveway. It is undisputed that Bradley did not alter the panel box or any part of the preexisting grounding system and that the work did not change the electrical load at the barn. It is further undisputed that plaintiff did not experience or report any shocks, flickering or other problems related to electrical grounding on the property, either before Bradley performed this work or thereafter until June 2006.

As part of Bradley's agreement with plaintiff, it retained defendant Inspector, LLC (hereinafter defendant) to inspect and certify the equipment it had installed. In June 2004, defendant inspected Bradley's work, including the installation of the transfer switch, and certified that the work was in compliance with the National Electric Code (hereinafter NEC). Defendant's employee testified that while inspecting Bradley's work, he observed that the preexisting ground wire that ran from the panel box to the buried ground rod, insofar as it was exposed above the ground, was the proper size and appeared to be in good condition. He did not inspect the buried portions of the grounding system. Defendant advised Bradley that a separate grounding rod should be installed for plaintiff's generator. Bradley thereafter installed a grounding rod to be connected to the generator during use. This newly-installed grounding rod was solely for use with the generator and was not connected to the transfer switch, the preexisting grounding system, or any other electrical equipment.[1] Plaintiff's generator was stored in his garage and, after the initial installation and testing, was never used or connected to the system.

During a storm in June 2006, a tree fell on a utility power pole near plaintiff's property. The 4,800-volt primary line supported by the pole fell across the triplex service line running from the pole to plaintiff's property, energized the bare neutral wire on the line, and caused electrical arcing that started a fire, destroying plaintiff's barn. Plaintiff subsequently commenced this action contending, in part, that Bradley negligently failed to inspect the preexisting grounding system before using it to ground the transfer switch and that defendant negligently approved Bradley's work without inspecting the preexisting system, including the portion buried under plaintiff's driveway. Plaintiff contends that the fire would have been prevented if Bradley or defendant had discovered and corrected alleged defects in the buried part of the system. Defendant moved for summary judgment dismissing the amended complaint against it, and Supreme Court granted the motion, finding that plaintiff had failed to demonstrate either the breach of a duty or proximate cause. Plaintiff now appeals.

" 'In the absence of duty, there is no breach and without a breach there is no liability' " (*Kunz v New Netherlands Routes, Inc.*, 64 AD3d 956, 957 [2009], quoting *Pulka v Edelman*, 40

---

**1.** It appears that defendant may not have returned to plaintiff's property to inspect the newly-installed grounding rod, but this is not significant as there is no claim that the rod was defective or that it contributed in any way to the subsequent fire.

NY2d 781, 782 [1976]). Supreme Court correctly found that defendant's submissions were sufficient to establish its prima facie entitlement to judgment as a matter of law on the ground that it had no duty to inspect the preexisting electrical grounding system (see *Zuckerman v City of New York*, 49 NY2d 557, 561-562 [1980]). Defendant's expert, a licensed professional engineer, opined that the applicable standards of care for defendant's inspection of Bradley's work were set out in the 1999 NEC, made applicable in New York by incorporation in the 2002 Residential Code of the State of New York. This expert opined that the NEC contemplates that new electrical equipment can be installed in an existing system without the inspection or modification of preexisting parts of the system. He further opined that since Bradley's work neither altered the preexisting grounding system nor increased the electrical load carried by the system, there were no indications that the preexisting system was not functioning safely, and the visible portion of the system was in compliance with the NEC, defendant was not required to inspect the underground part of the preexisting grounding system. Defendant also demonstrated that it had no contractual obligation to inspect the preexisting grounding system, by submitting Bradley's application retaining it for the limited purpose of inspecting the specific electrical equipment that Bradley had installed (see *Jablonski v Rapalje*, 14 AD3d 484, 488 [2005]; *470 Owners Corp. v Richard L. Heimer, P.E., P.C.*, 258 AD2d 558, 558-559 [1999]; see also *Kleinberg v City of New York*, 27 AD3d 317, 317 [2006]). Defendant therefore established its prima facie entitlement to judgment as a matter of law on the ground that it had no duty to inspect the buried part of the preexisting grounding system, shifting the burden to plaintiff to submit admissible evidence establishing the existence of triable issues of fact (see *Zuckerman v City of New York*, 49 NY2d at 562).

Plaintiff's submissions were insufficient to meet this burden. Plaintiff's expert opined that because article 250 of the NEC requires newly-installed equipment to be properly grounded, defendant's duty to inspect Bradley's work included an obligation to inspect the preexisting grounding system to which the transfer switch was connected, including the underground portions.[2] The only basis for this opinion, however, was a checklist published by the International Association of Electrical Inspec-

---

2. In Supreme Court, plaintiff's expert also asserted that defendant should have realized that the existing grounding system was inadequate because the visible portion of the ground wire was too narrow to meet NEC requirements. Defendant's expert disagreed, and the court found that defendant's expert had

tors indicating that buried components should be included in inspections of grounding systems. However, this checklist is not part of the NEC. Further, on its face, it provides a methodology for the inspection of electrical grounding systems rather than setting out an independent standard for determining when such inspections are required. The expert's opinion was not based on other applicable professional standards or record evidence, and was therefore insufficient to demonstrate that its conclusions regarding defendant's duty were " 'more than mere speculation and would, if offered alone at trial, support a verdict in the proponent's favor' " (*Martin v Village of Tupper Lake*, 282 AD2d 975, 977 [2001], quoting *Romano v Stanley*, 90 NY2d 444, 452 [1997]).

Plaintiff did not demonstrate any other factual issues regarding the scope of defendant's contract or its alleged duty to inspect the grounding system. As a professional, defendant was " 'subject to tort liability for failure to exercise reasonable care, irrespective of [its] contractual duties' " (*Kohl v Green*, 235 AD2d 671, 671 [1997], *lv denied* 89 NY2d 1025 [1997], quoting *Sommer v Federal Signal Corp.*, 79 NY2d 540, 551 [1992]; *see Hayes v Niagara Mohawk Power Corp.*, 261 AD2d 748, 750 [1999]). It is well established, however, that " '[t]he risk reasonably to be perceived defines the duty to be obeyed' " (*Mesick v State of New York*, 118 AD2d 214, 217 [1986], *lv denied* 68 NY2d 611 [1986], quoting *Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 344 [1928]). Here, the alleged defects in the grounding system were buried under plaintiff's asphalt driveway, where they could not have been perceived or discovered without an excavation that neither Bradley nor defendant was hired to perform. In the absence of any defects in the visible portions of the grounding system, or reports of any problems with its functioning, plaintiff did not establish any factual basis on which it may be found that defendant's failure to excavate and inspect the buried portions constituted a failure of reasonable care (*contrast Sutherland v Thering Sales & Serv., Inc.*, 38 AD3d 967, 967-968 [2007]; *Hayes v Niagara Mohawk Power Corp.*, 261 AD2d at 750). As Supreme Court properly granted defendant's motion for summary judgment on the basis that it had no duty to inspect the preexisting grounding system, it is unnecessary to reach the issue of proximate cause.

Cardona, P.J., Peters, Kane and Stein, JJ., concur. Ordered that the order is affirmed, with costs.

---

conclusively demonstrated that the No. 6 copper ground wire was an acceptable size. On appeal, plaintiff has conceded that the wire was properly sized and abandoned this claim.