■ SOUTHERN TIER CRANE SERVICES, INC., Respondent, v DAKKSCO PIPELINE CORP., Appellant, et al., Defendants. [52 NYS3d 551]—

Aarons, J. Appeal from an order of the Supreme Court (Faughnan, J.), entered August 20, 2015 in Tioga County, which, among other things, partially denied a motion by Dakksco Pipeline Corp. for summary judgment dismissing the complaint against it.

Defendant Dakksco Pipeline Corp. (hereinafter defendant) had a contract with the Village of Spencer, Tioga County to dredge sediment from a pond. As part of this project, defendant subcontracted with plaintiff to remove the dredge from the pond. In October 2009, plaintiff positioned a crane in a staging area by the pond but, when the crane operator started removing the dredge, the ground underneath the crane gave way, and the crane began to sink and ultimately fell into the pond. Plaintiff commenced this action against defendant, among others, alleging, as relevant here, a negligence cause of action. Following joinder of issue and discovery, defendant moved for summary judgment. Supreme Court partially granted defendant's motion, but denied it to the extent that defendant sought dismissal of the negligence cause of action. Defendant now appeals. We affirm.

Defendant first contends that it owed no duty to plaintiff independent of the contract entered into between them. In a case such as this one where the parties' relationship stems from a contract, a "duty must spring from circumstances extraneous

to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389 [1987]; *see Sommer v Federal Signal Corp.*, 79 NY2d 540, 551 [1992]; *Syllman v Calleo Dev. Corp.*, 290 AD2d 209, 210 [2002]). "In determining the scope of duty, courts examine, among other factors, whether the injury-producing occurrence is one that could have been anticipated" (*Montanez v New York State Elec. & Gas*, 144 AD3d 1241, 1243 [2016] [internal quotation marks and citations omitted]). Whether a duty exists in the first instance is a question of law for the courts (*see Di Ponzio v Riordan*, 89 NY2d 578, 583 [1997]).

Here, neither the price quote nor the work order—the documents embodying the contractual relationship between plaintiff and defendant—contained terms regarding site safety or the placement of cranes at the site. The record nonetheless reveals that Daniel Morin, defendant's president, scouted an area by the pond where the dredging would take place in order to construct a "staging area" that was to be used for daily activities and access for construction equipment. In July 2009, defendant constructed the staging area and, at the time of its construction, Morin knew that a crane would eventually be working on it. Morin stated in his deposition that the selected area was stable from a soil perspective because of its proximity to the existing asphalt road and he believed that the ground would be able to support the use of cranes. More critically, defendant's obligations under its contract with the Village required that it periodically "inspect [the] earthwork to detect evidence of erosion and sedimentation" and to "promptly apply corrective measures." This contract also provided that defendant "shall be solely responsible for construction site safety" (*compare Moore v J.A. Bradley & Sons, Inc.*, 68 AD3d 1419, 1421 [2009]). Under these circumstances and inasmuch as a general contractor, such as defendant, has a common-law duty to maintain a safe work site (*see Wejs v Heinbockel*, 142 AD3d 990, 991 [2016], *lv denied* 28 NY3d 911 [2016]; *Card v Cornell Univ.*, 117 AD3d 1225, 1226 [2014]), we conclude that defendant owed a duty to plaintiff to ensure that the soil underneath the staging area site was suitable to support a crane (*see generally Wynne v State of New York*, 53 AD3d 656, 657-658 [2008]).

We also find that the record evidence demonstrates a triable issue of fact as to defendant's alleged negligence (*see Frisbee v 156 R.R. Ave. Corp.*, 85 AD3d 1258, 1259-1260 [2011]). Morin testified in his deposition that he read a soil boring report

determining that the soil in areas by the pond was wet and soft. Even though the report did not discuss the soil conditions underneath where the staging area was specifically constructed, Morin never tested such area, nor did he have any discussions with engineers regarding the subsurface conditions by the pond. In addition, notwithstanding defendant's contractual obligation to periodically inspect the earthwork for erosion, Morin checked "[o]nly what [he] could see above water." And, even after defendant performed its initial dredging work and a different crane had been operating on the staging area for approximately three months prior to October 2009, Morin did not take any steps to see whether this work weakened the staging area or the ground underneath such area.

Furthermore, James Matt, one of plaintiff's employees at the time of the incident in question, asked Morin about the ground conditions and was informed by him that "the subbase was 12 to 13 inches of compacted base" and that it was "very stable." Charles Hendrickson, the crane operator, testified in his deposition that he also relied on the information provided by Morin. After the crane fell, however, Matt inspected the site and "saw there was four to five inches of subgrade instead of 12 to 13." Matt also stated that the ground on which the crane was situated had "given out," was "really saturated and wet" and "wasn't what [he] was told it was." Hendrickson similarly described the ground conditions as "muck and mud." Viewing this evidence in a light most favorable to plaintiff, we conclude that a triable issue of fact exists as to whether defendant had notice that the soil by the pond was not stable to support a crane and whether defendant breached its duty to maintain a safe work site (*see Card v Cornell Univ.*, 117 AD3d at 1226-1227; *Oakes v Wal-Mart Real Estate Bus. Trust*, 99 AD3d 31, 41 [2012]; *Gadani v Dormitory Auth. of State of N.Y.*, 43 AD3d 1218, 1221 [2007]).

Nor are we persuaded by defendant's argument that Hendrickson's placement of the crane on the edge of the bank was the sole proximate cause of the accident. "As a general rule, the question of proximate cause is to be decided by the finder of fact" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 312 [1980]; *see Hain v Jamison*, 28 NY3d 524, 529-530 [2016]). In light of the competing expert opinions offered by the parties as to the cause of the accident, we conclude that a triable issue of fact exists on the issue of proximate cause (*see generally Dupell v Levesque*, 198 AD2d 712, 713 [1993]).

Garry, J.P., Lynch, Clark and Mulvey, JJ., concur. Ordered that the order is affirmed, with costs.